CV 13- 6458

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SPATT, J.

```
-------------------------------------------------------------x
MAZUMA HOLDING CORP.                          :
                                              :      Civil Action No.
                      Plaintiff,              :              BROWN, M. J.
                                              :
       -against-                              :
                                              :
STEVEN H. BETHKE, HERBERT H. PRATT,           :
GRAHAM R. WILLIAMS, AND ZICIX                 :
CORPORATION                                   :
                                              :
                      Defendants.             :
------------------------------------------------------------- x
```

## COMPLAINT

Plaintiff, Mazuma Holding Corp. ("Mazuma"), files this Complaint and alleges the following:

### I. SUMMARY

1.      Mazuma brings this action for damages caused by violations of the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder by Steven H. Bethke ("Bethke"), Herbert H. Pratt ("Pratt"), Graham R. Williams ("Williams"), and Zicix Corporation ("Zicix"), (collectively, the "Defendants"). Through this action, Mazuma seeks to recover losses caused by the Defendants' intentional and/or reckless misconduct, including compensatory and/or rescissory damages.

2.      Pursuant to this Court's supplemental jurisdiction, Mazuma also brings this action under the laws of the state of Texas for damages caused by the Defendants' breach of warranty, civil conspiracy, breach of fiduciary duty, negligence, and violations of the antifraud provisions of Article 581 of the Texas Securities Act. In addition to direct damages, Mazuma seeks

consequential damages, exemplary damages, all costs of court, and Mazuma's reasonable attorneys' fees.

3.      Zicix is the successor company of Bederra Corporation ("Bederra" or the "Company"), as a result of a mere change of name. At all relevant times, Williams was the President and Chief Executive Officer ("CEO"), as well as a director, of Bederra and currently serves in the same role for Zicix. At all relevant times, Pratt was Bederra's Vice President, as well as a director of Bederra. Bethke was also a director of Bederra.

4.      Mazuma was an investor in Bederra and was well-known to the Defendants. Mazuma's business strategy at the time of the stock purchases at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the "Pink Sheets." Nano-cap companies, such as Bederra, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms. Mazuma provided capital to these companies as an investment in return for shares purchased at a discount to market price.

5.      In 2008, Mazuma invested more than $140,000 in Bederra by purchasing shares directly from the Company on at least six occasions. Williams instructed Mazuma to coordinate the purchases with Bethke, which Mazuma did. On each occasion, Williams directed, in writing, First National Trust Company, Inc. ("First National Trust"), Bederra's transfer agent, to issue stock certificates to Mazuma pursuant to the terms of the investment. Those stock certificates contained the signatures of Williams (who was then the secretary of Bederra) and S.E. Altman, who was serving as Bederra's president at the time.

6.      Beginning in early 2009, Mazuma purchased blocks of Bederra shares directly from Bethke. Mazuma purchased a total of approximately 1.139 billion shares of Bederra stock from Bethke between January 2009 and May 2010 (hereinafter, the "Mazuma Shares"). Bethke represented that the shares were duly issued, unrestricted and freely tradeable. In advance of each

2

transaction, Mazuma received several documents signed by Williams certifying that Bethke held good title to the shares and that Williams and the Company had authorized the pending share sale to Mazuma. On each occasion, Mazuma received authentic Bederra stock certificates containing the signatures of Williams and Pratt.

7.      In an apparent attempt to deflect increasing regulatory pressure bearing down on the Defendants, in 2012, Zicix filed a civil action in the State of Texas against Mazuma and others, alleging, generally, that the Mazuma Shares were not authorized by Bederra despite knowing or being reckless in not knowing that Bethke was in fact engaged in selling in excess of a billion shares to Mazuma.

8.      In an effort to conceal Bethke's stock sales and lure Mazuma into believing that they were legitimate, Defendants made several material misrepresentations related to the authenticity of the shares and the authority of Bethke. They manufactured business records and signed stock certificates to make it appear as if Mazuma's shares were not restricted, not legended, authorized and freely tradeable.

9.      Defendants' knowledge of these unlawful sales is shown by the actions they took to cover up the scheme. During the relevant period, the volume of trading in Bederra stock exceeded the number of free-trading shares issued and outstanding (the "float") due to the introduction of the Mazuma Shares into the market.

10.     In an effort to cover up the presence of the fraudulent shares, Pratt and or Williams caused Bederra to continually increase the number of authorized shares—eventually increasing the number of authorized shares on the market by more than 1500 percent in an apparent effort to conceal the Defendants' fraud. Pratt and or Williams also caused the Company to ratify the issuance of the Mazuma Shares on October 29, 2010 as part of the cover-up of Defendants' role in the Mazuma Share issuances.

3

11.     The actions of Defendants, directly and indirectly, caused Mazuma to incur substantial damages.

## II. JURISDICTION AND VENUE

12.     This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b)), and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5). The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa). This Court also has supplemental (pendent) jurisdiction pursuant to 28 U.S.C. § 1367 over the related state statutory and common law claims arising from the same nucleus of operative fact.

13.     Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York.

14.     Venue is proper in this court pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties established by the federal securities laws occurred within this judicial district. Additionally, Mazuma transacts business and maintains its principal place of business in this district.

15.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

4

### III. PARTIES

16.     Plaintiff Mazuma Holding Corp. is a non-bank holding company that makes investments in other entities. Its office is located in located in Great Neck, New York.

17.     Defendant Zicix Corporation is the successor company of Bederra Corporation and was a corporation organized under the laws of the state of Nevada.

18.     Defendant Graham R. Williams was the President, Chief Executive Officer ("CEO") and a director of Bederra and currently serves in the same role for Zicix and, upon information and belief, is a Texas resident.

19.     Defendant Herbert H. Pratt was Bederra's Vice President, as well as a director and, upon information and belief, is a Texas resident.

20.     Defendant Steven H. Bethke was a director of Bederra and, upon information and belief, is a Texas resident.

21.     First National Trust Company ("First National Trust") was Bederra's transfer agent from approximately August 2007 until approximately July 2010.

### IV. FACTUAL ALLEGATIONS

22.     Defendants made knowing material misrepresentations to Mazuma, causing Mazuma to purchase shares of Bederra stock.

**A.     Mazuma's Purchases of Bederra Stock in 2008**

23.     Mazuma established contact with Williams on January 16, 2008 to discuss a potential investment in Bederra. During this discussion, Williams introduced Mazuma to Bethke as the individual who would be working with Mazuma on behalf of Bederra for Mazuma's potential investment in Bederra. Mr. Bethke was a director of Bederra at this time.

24.     Mazuma purchased blocks of Bederra shares at a discount six separate times in 2008. At Bederra's and Williams' express direction, Mazuma coordinated with Bethke in all of

the 2008 transactions. In each of these transactions, Williams directed First National Trust to issue share certificates to Mazuma, which First National Trust did.

25.      In total, Mazuma invested approximately $142,000 in Bederra in 2008. Zicix, Williams, and Pratt were well aware of Mazuma's 2008 investments in the Company.

**B.      Mazuma's Purchases of the Mazuma Shares in 2009 and 2010**

26.      Following Bethke's coordination of Mazuma's purchases of Bederra shares in 2008, Bethke contacted Mazuma in January 2009, inquiring whether Mazuma was interested in purchasing more shares of Bederra stock. Mazuma considered Bethke to be a credible individual having the imprimatur of both Bederra and Williams since he was a former director of Bederra who was previously directed by Williams to facilitate Mazuma's purchases of shares from the corporation.

27.      Mazuma purchased a total of approximately 1.139 billion shares of Bederra stock from Bethke between January 2009 and May 2010. (As noted above, these shares are collectively referred to as the "Mazuma Shares").

28.      Defendants made the following material misrepresentations relating to the authenticity of the shares:

(a) Bethke represented to Mazuma in the governing stock purchase agreements that he had good title to the shares and that they were freely tradable.

(b) Williams signed verifications, confirming that Bederra was aware of these sales of Bederra stock to Mazuma.

(c) Williams signed certifications, confirming that Bethke owned the shares that he was selling to Mazuma and confirming the representations of Bethke contained in the stock purchase agreements. Further, these certifications included an exhibit containing

6

corporate resolutions in which Williams certified that Bederra's Board of Directors had approved and ratified the issuance of Bederra shares to Bethke.

**C.      First National Trust**

29.      Defendants' relationship and interactions with First National Trust further evidence their knowledge of the shares of Bederra stock sold to Mazuma.

30.      First National Trust served as Bederra's transfer agent at all relevant times, and as the agent for disclosed principle, the actions of First National Trust must be imputed to Bederra/Zicix.

31.      As Bederra's transfer agent, First National Trust would have been in constant contact with Bederra's principals—Williams and Pratt—regarding trading in Bederra stock.

32.      As its transfer agent, First National Trust owed a fiduciary duty to Bederra.

33.      It was the responsibility of Bederra's principals, namely Williams and Pratt, to monitor the activities of First National Trust.

34.      In each of the sales of the Mazuma Shares, First National Trust issued the share certificates to Mazuma.  These share certificates were authentic and contained the signatures of Defendants Williams and Pratt.[1]

35.      According to a December 1, 2010 letter from Williams to the transfer agent that succeeded First National Trust, "Bederra Corporation authorized First National Trust to print certificates numbered 501 through 1001."  Those authentic certificates contained the valid signatures of Williams and Pratt and the certificates corresponding to the Mazuma Shares that were issued to Mazuma fell within the range 501 through 1001.

---

[1]  The certificate numbers on the share certificates issued to Mazuma in 2009 and 2010 were:  578; 598; 623; 638; 644; 662; 664; 665; 668; 672; 675; 677; 679; 681; 683; 684; 696; 697; 701; and 707.

36.     Defendants Bederra, Williams, and Pratt thus knowingly entrusted First National Trust with 500 Bederra share certificates containing the signatures of Williams and Pratt.

**D.     Bederra's Undisclosed Issuances of Shares to Williams, Pratt, and Other Insiders**

37.     The following undisclosed issuances of shares also indicates an ongoing scheme involving certain defendants with respect to Bederra shares.

38.     As noted above, Bederra gave 500 share certificates to First National Trust so that it could issue shares of Company stock.

39.     From those 500 certificates, First National Trust issued approximately 26 certificates to Mazuma through the sales of the Mazuma Shares.

40.     From that same batch of 500 certificates, the Company also issued 25 stock certificates to Williams, Pratt, and the Company's lawyer. The Company issued 849,000 shares to Pratt and another 646,000 shares to Williams. The Company also issued shares to Bederra's lawyer (George Kirk).

41.     The Company also issued 301,000 shares of Bederra stock to Christopher Williams, who is believed to be Graham Williams' son.

42.     These stock issuances to insiders were not disclosed to Bederra shareholders.

43.     During the same time period in which Bethke, through First National Trust, was issuing shares to Mazuma, the Company also was issuing shares to Williams, Pratt, and other Company insiders.

**E.     Bederra's Public Disclosures**

44.     Throughout the relevant time period, Bederra was exponentially increasing its shares outstanding and, at the same time, was suffering increasing operating losses. Its public disclosures during this time period confirm these facts and further evidence its involvement in a scheme to sell shares of Bederra stock into the marketplace.

45.     Bederra Corporation became a publicly-traded, non-reporting company in late 2007.

46.     As a non-reporting company, Bederra had no financial reporting requirements, but it nevertheless filed periodic reports and disclosures on the electronic quotation system operated by Pink OTC Markets (known as "Pink Sheets" or the "OTC Financial Network").

47.     The Company made at least 22 filings on the Pink Sheets between May 28, 2008 and December 22, 2009.

48.     The Company also issued more than 60 press releases between March 2008 and January 2011.

49.     Bederra routinely represented within its filings with Pink Sheets the numbers of shares authorized and outstanding, as well as the public float. Bederra's capital share structure was reported to the public as follows:

| Date | Authorized | Outstanding | Float |
|------|-----------|-------------|-------|
| December 31, 2007[2] | 200,000,000 | 17,416,204 | Unknown |
| June 30, 2008[3] | 200,000,000 | 89,264,666 | 93,319,130 |
| October 21, 2008[4] | 200,000,000 | 136,114,666 | Unknown |
| December 31, 2008[5] | 400,000,000 | 257,888,834 | 142,222,166 |
| August 19, 2009[6] | 600,000,000 | 117,159,973 | 90,159,973[7] |

---

[2]  Statement of Assets, Liabilities, and Equity, Accrual Basis for Bederra Corporation as of December 31, 2007 (May 27, 2008)

[3]  Initial Company Information and Disclosure Statement (October 27, 2008). http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=17950. This statement also notes that there are 594 shareholders of record.

[4]  Attorney Letter with Respect to Current Information (October 27, 2008). http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=17951.

[5]  Annual Report (February 17, 2009). http://www.otcmarkets.com/financialReportViewer ?symbol=ZICX&id=19572. This report also notes that there are 594 shareholders of record and that in January 2009, there is a 400:1 stock split scheduled.

| | | | |
|---|---|---|---|
| **September 30, 2009**[8] | 600,000,000 | 189,759,973 | 155,659,973 |
| **December 31, 2009**[9] | 5,000,000,000 | 1,464,709,973 | 315,659,973 |
| **January 29, 2010**[10] | 5,000,000,000 | 1,358,759,000 | Unknown |
| **March 31, 2010**[11] | 5,000,000,000 | 1,378,759,000 | 404,827,453 |
| **April 20, 2010**[12] | 5,000,000,000 | 404,827,453 | Unknown |
| **June 30, 2010**[13] | 5,000,000,000 | 1,745,412,319 | Unknown |
| **September 30, 2010**[14] | 5,000,000,000 | 3,055,522,347 | 1,999,522,347 |

50.    Bederra's numerous public disclosures and press releases demonstrate that Williams and Pratt were monitoring and publicly disclosing the float of Bederra securities and the numbers of authorized and restricted shares.

---

[6]  Attorney Letter with Respect to Current Information (August 19, 2009). http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=23589.

[7]  Initial Company Information and Disclosure Statement (December 17, 2009).  http://www.otcmarkets.com /financialReportViewer?symbol=ZICX&id=27200.  This statement also notes that there are 645 shareholders of record.

[8]  Quarterly Report, Bederra Corporation Share Structure (December 22, 2009).  http://www.otcmarkets.com /financialReportViewer?symbol=ZICX&id=27316.  This report notes that there are 645 shareholders of record.

[9]  Annual Report, Bederra Corporation Share Structure (March 31, 2010).  http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=30419.  This report notes that there are 645 shareholders of record.

[10]  "Bederra Corporation Reports Current Share Structure (Jan. 29, 2010).

[11]  Annual Report, Bederra Corporation Share Structure (May 14, 2010).  http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=32033 (noting that there are 645 shareholders of record).  The Initial Company Information and Disclosure Statement, filed on July 22, 2010, notes that there were 1,104,350,000 shares issued in the third and fourth quarters of 2009 and 242,500,000 shares issued in first quarter 2010. http://www.otcmarkets.com/financialReportViewer?symbol=ZICX&id=34270.  It was in this time period, of massive issuance of shares, that Bederra had significant slowdown in operating revenue and had to close its Lumar Imaging Facility.  http://www.otcmarkets.com/financialReportViewer?symbol=ZICX&id=34272. Finally, JPM Chase obtained a judgment against the Company in the amount of $106,000 for unpaid balance of a note payable and Atlantic Imaging obtained a judgment in the amount of $84,000 against Lumar Imaging. http://www.otcmarkets.com/financialReportViewer?symbol=ZICX&id=34346.

[12]  "Bederra Corporation Updates Share Structure," (April 20, 2010).

[13]  Attorney Letter with Respect to Current Information (August 19, 2010).  http://www.otcmarkets.com/ financialReportViewer?symbol=ZICX&id=35811.

[14]  Quarterly Report (Oct. 29, 2010).  http://www.otcmarkets.com/financialReportViewer? symbol=ZICX&id=38274.

51.     According to Bederra's annual report for the year ended December 31, 2009, which was released on March 31, 2010, Bederra increased the number of authorized shares to 5,000,000,000.  Bederra reported that the float on that date was 315,659,973.

52.     Around this same time period, according to Bederra's public filings, the Company was incurring regular operating losses, including cash base operating losses as follows:  $60,000 for the first quarter of 2009; $405,925 for the six months ending on June 2009; and approximately $50,000 for the third quarter of 2009.

53.     Upon information and belief, Bederra increased the number of authorized shares from 600,000,000 to 5,000,000,000 at the end of 2009 because Williams and Pratt knew of, or were reckless in not knowing about, the issuance of the Mazuma Shares and needed authorization for those additional shares in the amount of shares that Bederra was authorized to issue.  These additional shares included the Mazuma Shares that had been sold into the market up to that point and future shares that would enter the market through Mazuma's resales of shares purchased from Bethke.

54.     Further, Zicix, Williams, and Pratt knew or were reckless in not knowing that Bethke was issuing shares to Mazuma.  Had they monitored the volume of trading in Bederra stock—as directors fulfilling their fiduciary duties to shareholders would have done—Williams and Pratt either knew or should have seen that the volume of trading in Bederra stock often exceeded the "represented" float.  For example, on just two trading days – January 12 and 13, 2010 – the volume of trading in Bederra stock exceeded the float as reported just two weeks earlier by more than 1,000,000 shares.  Further, on January 29, 2010, the Company reported that the float of Bederra stock was 404,827,453, even though the volume of trading in a single trading day on January 26, 2010—just three days earlier—exceeded that amount.

11

55.     Finally, the Company announced on October 29, 2010 that it had decided to accept the Mazuma Shares as part of its issued and outstanding shares, further demonstrating that Zicix, Williams, and Pratt were either complicit in or aware of Bethke's sales of the Mazuma Shares to Mazuma.

## V. CLAIMS FOR RELIEF

**A.     Count 1—Fraud:  Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b) and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]—Zicix, Williams, Pratt, and Bethke**

56.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     Through the foregoing conduct, Defendant Zicix (as successor in interest to Bederra), along with Defendants Bethke, Pratt, and Williams knowingly and recklessly engaged in manipulation and deceptive conduct in connection with a securities transaction in violation of 15 U.S.C. §78j(b) and the rules and regulations promulgated thereunder, by failing to disclose and misrepresenting the true nature of the Mazuma Shares.

58.     The Defendants further engaged in knowing manipulation and deceptive conduct by directly representing and warranting that the Mazuma Shares were authentic.

59.     In reliance on the foregoing misrepresentations and material omissions by the Defendants, Mazuma was induced to purchase the Mazuma Shares, representing more than one billion shares of Bederra stock.

60.     As a direct and proximate result of the Defendants' conduct, Mazuma suffered damages, in an amount to be determined by the Court, but not less than $2,000,000.

**B.**     **Count 2—Breach of Warranty against a Transferor and Issuer of Securities Under Texas Business and Commercial Code §§ 8.205-208—Zicix, Williams, Pratt, and Bethke**

61.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     Mazuma gave value for the Mazuma Shares, did not have notice of any adverse claim to the Mazuma Shares, and obtained control of the Mazuma Shares—making Mazuma a purchaser of securities for value and a protected purchaser of securities under Texas law.

63.     Mazuma purchased the Mazuma Shares, and the shares Mazuma received were signed by Williams and Pratt, each of whom possessed both the actual and apparent authority to sign Bederra's stock certificates or prepare them for signing.

64.     Defendant Bethke, by virtue of his written and oral statements, represented and warranted that the Mazuma Shares represented the ownership of shares of the common stock of Bederra and warranted that they were genuine and in all respects valid.

65.     Defendants Williams and Pratt by virtue of their written and oral statements, and by their signatures in their authorized and apparent capacity as President (and director of Bederra) and Secretary, respectively, represented and warranted that the Mazuma Shares represented the ownership of shares of the common stock of Bederra and warranted that they were genuine and in all respects valid.

66.     Defendant Zicix, by the actions of its agents Williams and Pratt, who possessed the authority to sign its security certificates, prepare them for signing, or otherwise handle them, represented and warranted that the Mazuma Shares represented the ownership of shares of the common stock of Bederra and warranted that they were genuine and in all respects valid.

67.     Mazuma relied upon Defendants' warranties in purchasing the Mazuma Shares from the Defendants and in paying approximately $371,375 therefor.

13

68.     Defendants breached these warranties, and these warranties and representations were false and untrue in that the Mazuma Shares sold to Mazuma were restricted and voidable to the extent not authorized.

69.     Defendants' breach of these warranties caused Mazuma substantial damages in an amount to be determined by the Court, but not less than $2,000,000.

C.     **Count 3—Civil Conspiracy under Texas Law—Williams, Pratt, and Bethke**

70.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     In engaging in the foregoing acts, each of these Defendants was one member of a combination of two or more persons, an object of which was to sell the Mazuma Shares to Mazuma. Mazuma is not able at the time of this pleading to name each of the other members of the combination but they include, among others, Williams, Pratt, and Bethke, and likely other currently unidentified third parties.

72.     Upon information and belief, there was a meeting of the minds of all members of the combination on the objects of the conspiracy and/or the course of action.

73.     As a direct and proximate result of the conspiracy and combination, Mazuma has suffered substantial injuries and damages.

74.     Mazuma is entitled to recover from Williams, Pratt, and Bethke, along with others acting in concert with them as part of the combination, jointly and severally, those direct and consequential damages sustained by Mazuma as a result of the course of action, along with exemplary damages, all costs of court, and Mazuma's reasonable attorneys' fees.

D.     **Count 4—Breach of Fiduciary Duty under Texas Law—Zicix, Williams, and Pratt**

75.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

14

76.     Prior to the purchases at issue in this litigation, Zicix (as successor in interest to Bederra), Williams, and Pratt caused shares of Bederra stock to be sold to Mazuma and made it clear to Mazuma that Mazuma could trust and purchase shares from Bethke through its transfer agent, First National Trust.

77.     Zicix, Williams, and Pratt owed a fiduciary duty to Mazuma since Mazuma was a shareholder of Bederra.

78.     Zicix, Williams, and Pratt breached that duty by the conduct described herein.

79.     Zicix's, Williams' and Pratt's breach of fiduciary duty has caused significant injury to Mazuma.  The actions of Zicix, Williams, and Pratt have caused Mazuma damages because their breaches of fiduciary duty owed to Mazuma caused it to purchase the Mazuma Shares.

**E.    Count 5—Negligence under Texas Law—Zicix, Williams & Pratt**

80.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     In this circumstance, Zicix, Williams, and Pratt owed a duty to Bederra shareholders, including Mazuma, to ensure that they were purchasing shares whose issuance had been duly authorized by the Company and its articles on incorporation.

82.     Zicix, Williams, and Pratt breached their fiduciary duties by failing to exercise ordinary care in ensuring that Bederra shareholders did not purchase shares whose issuance had not been authorized by the Company.

83.     Zicix, Williams, and Pratt also breached their fiduciary duties to Bederra's shareholders by failing to safeguard the Bederra share certificates when they handed them over to First National Trust.

15

84.     Mazuma suffered actual injury as a result of Zicix's, Williams', and Pratt's breach of their fiduciary duties.

85.     Zicix's, Williams', and Pratt's breach proximately caused Mazuma's injury.

**F.     Count 6—Violation of the Texas Securities Act, Texas Civil Statute Article 581, Section 33A—Bethke, Williams and Pratt**

86.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  For the purposes of this cause of action, Mazuma expressly disavows reliance on, and it expressly does not incorporate, any allegations that may be interpreted to sound in fraud or any allegations relating to scienter.

87.     Bethke offered and sold the Mazuma Shares to Mazuma.

88.     In  connection with the purchases of Bederra shares from Bethke, Bethke provided Mazuma with representations from Williams and/or Pratt representing to Mazuma that the shares were validly issued and freely tradeable.

89.     The foregoing representations were false at the time they were made.

90.     Such misrepresentations caused Mazuma to purchase the Mazuma Shares.

91.     As a direct and proximate result of Bethke's conduct, Bethke caused Mazuma to incur substantial monetary damages.

**G.     Count 7—Aiding and Abetting Violation of the Texas Securities Act, Texas Civil Statute Article 581, Section 33F-Williams and Pratt**

92.     Mazuma repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  For the purposes of this cause of action, Mazuma expressly disavows reliance on and expressly does not incorporate any allegations that may be interpreted to sound in fraud or any allegations relating to scienter.

93.     Bethke violated the Texas Securities Act by selling the Mazuma Shares by virtue of false and misleading statements of material fact.

16

94.     With awareness of their role in Bethke's misrepresentations, Williams and Pratt directly and indirectly, with intent to deceive or defraud, or with reckless disregard for the truth of the law, materially aided Bethke in the fraudulent sales of the Mazuma Shares. In doing so, Williams and Pratt materially aided Bethke in omitting material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and false.

95.     Williams and Pratt knew, or acted with reckless disregard for the truth in not knowing, that Bethke's representations regarding the Mazuma Shares were false.

96.     Mazuma would not have purchased the Mazuma Shares had Williams or Pratt informed Mazuma that the Mazuma Shares were unauthentic.

97.     As a direct and proximate result of Williams' and Pratt's aiding and abetting Bethke's violation of the Texas Securities Act, Mazuma has suffered damages.

98.     Williams and Pratt benefitted from their conduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Mazuma demands judgment against Defendants as follows:

A.     Requiring all Defendants, jointly and severally, to pay those direct and consequential damages sustained by Mazuma as a result of Defendants' wrongdoing in an amount to be determined by the Court, but not less than $2,000,000, along with punitive damages, exemplary damages, all costs of court, and Mazuma's reasonable attorneys' fees.

B:     Requiring all Defendants, jointly and severally, to pay Mazuma prejudgment and post-judgment interest; and

17

C.      Retaining jurisdiction over this action to implement and carry out the terms of all

orders and decrees that may be entered; and

D.      Granting such other and further relief as the Court deems just and proper.

Dated: Great Neck, New York
November 20, 2013

                                 NAIDICH WURMAN BIRNBAUM & MADAY
                                 LLP

                                 By: _____
                                    Richard S. Naidich, Esq. (RSN 4102)
                                   Partner
                               80 Cuttermill Road, Suite 410
                               Great Neck, NY 11021
                               Telephone:    516-498-2900
                               Facsimile:    516-466-3555
                               Attorneys for Plaintiff - Mazuma Holding Corp.