**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MAZUMA HOLDING CORP.

                                      CV 13-6458 (ADS) (GRB)

            Plaintiff,

        -against-

STEVEN H. BETHKE, HERBERT H.
PRATT, GRAHAM R. WILLIAMS, and
ZICIX CORPORATION,

            Defendants.

-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN**
**DEFENDANTS' MOTION TO STAY PROCEEDING UNDER THE**
**COLORADO RIVER DOCTRINE, OR IN THE ALTERNATIVE,**
**TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

Nelson S. Ebaugh (admitted *pro hac vice*)
NELSON S. EBAUGH, P.C.
2777 Allen Parkway, Suite 1000
Houston, TX 77019
Ph    (713) 752-0700
Fax    (713) 739-0500
nebaugh@ebaughlaw.com

*Counsel for Defendants Graham R.*
*Williams and Zicix Corporation*

## TABLE OF CONTENTS

Factual Background ................................................................................................1

    Steve Bethke's Conversion of Bederra Securities ......................................................2

    Mazuma Holding's Role in the Conversion ...............................................................2

    Zicix Corporations Files Lawsuit Against Mazuma Holding and Others in Texas
    State Court ............................................................................................................3

    Mazuma Holding, Kramer, and Mayo Attempt to Move the State Action to New
    York ....................................................................................................................4

    Mazuma Holding Threatens to File Counterclaim against Zicix in the State Action...5

    Mazuma Holding Files a Vexatious Complaint to Initiate the Federal Action ...........6

Argument .............................................................................................................9

I    This Court Should Stay the Federal Action Pursuant to the Colorado River Doctrine .9

      A.  The State Action and the Instant Federal Action are Parallel Suits .................9

      B.  The Six Factor Test Under Colorado River Provides Exceptional
          Circumstances for a Stay of Plaintiff's Claims in Federal Court....................12

          1.  No Assumption by Federal or State Court of Jurisdiction over
              any Res or Property...........................................................................12

          2.  The Federal Forum is Less Convenient to the Parties than the
              State Forum......................................................................................12

          3.  There is a Danger of Piecemeal Litigation .........................................13

          4.  The State Action Preceded the Federal Action ....................................13

          5.  Inconsequential that a Federal Question
              Exists in the Federal Action...............................................................14

          6.  The Texas Courts are Adequate
              to Protect Mazuma Holding's Rights...................................................14

          7.  Vexatious or Reactive Nature of the Instant Federal Action ...............15

II  This Court Should Transfer Venue to the Southern District of Texas Pursuant
    to 28 U.S.C. § 1404(A) ................................................................................................16

        A.  The Southern District of Texas Is a Proper Venue ..........................................16

        B.  The Relevant Public and Private Factors Strongly Support Transfer ..............17

                1.  Convenience of the Witnesses ...............................................................17

                2.  Convenience of the Parties.....................................................................19

                3.  Locus of Operative Facts .......................................................................19

                4.  Availability of Process to Compel the Attendance
                    of Unwilling Witnesses...........................................................................20

                5.  Location of Relevant Documents and the Relative
                    Ease of Access to Sources of Proof ......................................................20

                6.  Relative Means of the Parties ................................................................22

                7.  District Court's Familiarity with Governing Law ................................23

                8.  Weight Accorded the Plaintiff's Choice of Forum................................23

                9.  Efficiency and the Interest of Justice ....................................................24

Conclusion .....................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Berman v. Informix Corp.,
30 F. Supp. 2d 653 (S.D .N.Y. 1998).................................................................................24

Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,
850 F. Supp 176 (E.D.N.Y. 1994) .......................................................................9, 10, 11

Blass v. Capital Int'l Security Group,
No. 99-CV-5738, 2001 WL 301137
(E.D.N.Y. March 23, 2001) ..............................................................................16, 20, 21, 22

Cali v. East Coast Aviation Servs., Ltd.,
178 F. Supp. 2d 276 (E.D.N.Y. 2001) ...........................................................................24

Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.,
600 F.2d 1228 (7th Cir. 1979) ....................................................................................11, 14

Colorado River Water Conservation District v. United States,
424 U.S. 800 (1976)......................................................................................................9, 14

Culp v. Gainsco, Inc.,
No. 0320854CIV, 2004 WL 2300426
(S.D. Fla. Oct. 1, 2004).................................................................................................21

First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,
862 F.Supp.2d 170 (E.D.N.Y. 2012) .............................................................................15

Foxfield Villa Associates, LLC v. Regnier,
918 F.Supp.2d 1192 (2013) ...........................................................................................13

Global Network Communs., Inc. v. City of New York,
458 F.3d 150 (2d Cir. 2006)............................................................................................4

Goldentree Asset Management, L.P. v. Longaberger Co.,
448 F.Supp.2d 589 (S.D.N.Y. 2006)..............................................................................12

Hernandez v. Graebel Van Lines,
761 F. Supp. 983 (E.D.N.Y. 1991) ................................................................................23

In re Global Cash Access Holdings, Inc. Securities Litigation,
No. 08 Cv. 3516, 2008 WL 4344531
(S.D.N.Y. Nov. 17, 2000) ..............................................................................................24

In re Hanger Orthopedic Group, Inc. Sec. Litig.,
418 F. Supp. 2d 164 (E.D.N.Y. 2006) .............................................................16

In re Intelligroup Securities Litig.,
527 F. Supp. 2d 262 (D. N.J. 2007) ................................................................1

In re McDermott Int'l, Inc., Sec. Litig.,
08 CIV. 9943 (DC), 2009 WL 1010039
(S.D.N.Y. Apr. 13, 2009)................................................................................21

In re Nematron Corp. Securities Litigation,
30 F. Supp. 2d 397 (S.D.N.Y. 1998)...........................................................20, 21

Medema v. Medema Builders, Inc.,
854 F.2d 210 (7th Cir. 1988) .....................................................................11, 14

Moses H Cone Memorial Hospital v. Mercury Const.,
460 U.S. 1 (1983)........................................................................................9, 14

Neil Bros. Ltd. v. World Wide Lines, Inc.,
425 F.Supp.2d 325 (E.D.N.Y. 2006) .........................................................17, 18

Option Resource Group v. Chambers Dev. Co.,
967 F. Supp. 846 (W.D. Pa. 1996)..................................................................1

Plotkin v. IP Axess, Inc.,
168 F. Supp. 2d 899 (N.D. Ill. 2001) .........................................................16, 22

Rentea v. Janes,
No. A-11-CV-031-LY, 2011 WL 3022568
(W.D. Tex. July 22, 2011) .............................................................................21

SEC v. Rizvi,
No. 04:09-CV-371, 2010 WL 3949311
(E.D. Tex. July 2, 2010)................................................................................21

Steinberg v. Nationwide Mut. Ins. Co.,
418 F.Supp.2d 215 (E.D.N.Y. 2006) ...............................................................12

Telesco v. Telesco Fuel and Masons' Materials, Inc.,
765 F.2d 356 (2d. Cir. 1985)....................................................................9, 14, 15

Twinde v. Threshold Pharms., Inc.,
07 CIV. 6227 JSR, 2007 WL 2746814
(S.D.N.Y. Sept. 17, 2007).............................................................................21

Wible v. Aetna Life Ins. Co.,
375 F. Supp. 2d 956 (C.D. Cal. 2005) ..............................................................................2

Wyler-Wittenberg v. MetLife Home Loans, Inc.,
899 F.Supp.2d 235 (E.D.N.Y. 2012) ..............................................................................17

## STATUTES AND RULES

15 U.S.C. § 77v(a) ..........................................................................................................17

28 U.S.C. § 1404(a) ........................................................................................................16

Fed. R. Evid. 803(8)(C) ....................................................................................................1

Fed. R. Civ . P. 45(c)(3)(B)(ii)........................................................................................20

Defendants Graham R. Williams and Zicix Corporation respectfully submit this memorandum in support of their Motion to Stay Proceeding Under the Colorado River Doctrine, or in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) on the grounds, inter alia, that there is a parallel action pending in Texas.

## FACTUAL BACKGROUND

The Securities and Exchange Commission's factual findings, including its opinions and conclusions, contained in settled administrative orders are admissible in subsequent private litigation under Federal Rule of Evidence 803(8)(C). E.g., Option Resource Group v. Chambers Dev. Co., 967 F. Supp. 846, 849 (W.D. Pa. 1996). There have been two administrative orders concerning the underling facts that are the subject of Mazuma Holding's Complaint. See Order Instituting Proceedings in In re Steven H. Bethke, Securities Exchange Act Release No. 67197 (Jun. 13, 2012), attached to the accompanying Declaration of Nelson S. Ebaugh ("Ebaugh Decl.") as Ex. A; Order Instituting Proceedings in In re Curt Kramer, Mazuma Corporation, Mazuma Funding Corporation, and Mazuma Holding Corporation, Securities Act Release No. 9485 (Nov. 25, 2013), attached to the Ebaugh Decl. as Ex. B. For this reason, frequent references are made to the factual findings, opinions, and conclusions in these two administrative orders.

This Court may take judicial notice of the factual findings, opinions, and conclusions in these two administrative orders because they are records of government administrative bodies. E.g., In re Intelligroup Securities Litig., 527 F. Supp. 2d 262, 273-4 (D. N.J. 2007) (noting that "[t]he court 'may take judicial notice of records and reports of administrative bodies,' such as notices and opinion letters.'") (citing Wible v. Aetna

Life Ins. Co., 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005) (taking judicial notice of a notice and opinion letter issued by the Department of Justice).

**Steve Bethke's Conversion of Bederra Securities**

From January 2009 through May 2010, Steve Bethke misappropriated share certificates from Bederra Corporation (now known as Zicix Corporation) while he controlled Bederra's stock transfer agent, First National Trust Company. Ebaugh Decl. Ex. A p. 2, ¶ 3; Ex. B p. 3, ¶ 10. Bethke used the stolen certificates, which had been pre-printed with the signatures of Graham Williams and Herb Pratt, Bederra officers and directors, to secretly issue over a billion Bederra shares, which he then sold to Mazuma Holding in exchange for payments into his personal bank account of over $350,000. Ebaugh Decl. Ex. A p. 2, ¶ 3; Ex. B p. 3, ¶ 10. To carry out his scheme, Bethke "fabricated officers' certificates and company resolutions in connection with the sale of the shares." Ebaugh Decl. Ex. A p. 2, ¶ 3.

In connection with this fraud, the Securities and Exchange Commission filed a complaint against Bethke in the United States District Court for the Southern District of Texas. Ebaugh Decl. Ex. C. The SEC's federal action against Bethke in Texas was not transferred to another venue. Instead it was initiated and brought to its final resolution in the United States District Court for the Southern District of Texas. Ebaugh Decl. Ex. A p. 2, ¶ 2.

**Mazuma Holding's Role in the Conversion**

Bethke sold all of the Bederra shares that he had misappropriated to only one investor, Mazuma Holding. Compl. ¶ 27. Curt Kramer is Mazuma Holding's sole officer. Ebaugh Decl. Ex. B p. 2, ¶ 1. Carlos Mayo is the sole finder for Mazuma

Holding.  Kramer and Mayo participated extensively in Mazuma Holding's purchases of the misappropriated shares.

Mazuma Holding purchased the Bederra shares at a significant discount from the then-prevailing market prices.  Ebaugh Decl. Ex. B p. 3, ¶ 11.  The discount made it highly likely that Mazuma Holding and Kramer could immediately re-sell the Bederra shares to the public for a short-term profit.  Ebaugh Decl. Ex. B p. 3, ¶ 11.  Mazuma Holding resold the shares to the public for a profit of at least $934,404.  Ebaugh Decl. Ex. B p. 3, ¶ 12.  The documents that Bethke had forged were provided to Mazuma Holding's brokers, including The Vertical Trading Group, LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and ACAP Financial, Inc., so that Mazuma Holding could immediately sell the shares into the open market.

When faced with red flags that Mazuma Holding's investment returns might be the product of fraudulent and even criminal activity, Mazuma Holding and its brokers had a duty to investigate the legitimacy of the investments.  However, Mazuma Holding and its brokers either ignored the red flags that the Bederra shares had been misappropriated or had knowledge that they were misappropriated.  Consequently, Mazuma Holding, Kramer, Mayo, Vertical Trading, Merrill Lynch, and ACAP are not protected purchasers under Article 8 of the Uniform Commercial Code.

### Zicix Corporations Files Lawsuit Against Mazuma Holding and Others in Texas State Court

On June 13, 2012, the Securities Exchange Commission issued its findings of fact in an order instituting proceedings against Bethke.  Ebaugh Decl. Ex. A p. 2, ¶¶ 1-3.  On August 31, 2012, Zicix filed a lawsuit in the 125th Civil District Court in Houston, Texas, seeking damages arising out of Bethke's misappropriation of Bederra stock (the "State

Action").  Ebaugh Decl. Ex. D.  It is well settled that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

The State Action has been pending for approximately one year and four months. Ebaugh Decl. Ex. D.  Over that time period, the parties have engaged in written discovery, have filed several motions, and submitted an agreed protective order which the state trial court has entered. Ebaugh Decl. Ex. D.  In June 2013, the state trial court entered an interlocutory judgment against Bethke and two companies controlled by him, First National Trust Company and FNTCO, Inc.  Ebaugh Decl. Ex. F.  On November 19, 2013, Zicix settled with a defendant in the State Action, giving one or more of the other defendants in the State Action a settlement "credit" (or a reduction of damages) at trial. Ebaugh Decl. Ex. G.

**Mazuma Holding, Kramer, and Mayo Attempt**
**to Move the State Action to New York**

In its motion to dismiss for forum non conveniens, Mazuma Holding attempted to have the State Action dismissed and refiled in New York.  Ebaugh Decl. Ex. H.  On August 26, 2013, the Texas court denied Mazuma Holding's motion to dismiss for forum non conveniens.  Ebaugh Decl. Ex. I.  Similarly, in their personal jurisdiction objections, Kramer and Mayo insisted that they could only be sued by Zicix in New York.  Ebaugh Decl. Exs. J & K.  On August 28, 2013, the Texas court denied Kramer and Mayo's objections to the trial court's exercise of personal jurisdiction over them.  Ebaugh Decl.

4

Ex. L.  On September 13, 2013, Kramer and Mayo filed their notice to appeal the denial

of their personal jurisdiction objections.  Ebaugh Decl. Ex. D.

**Mazuma Holding Threatens to File Counterclaim**
**against Zicix in the State Action**

On September 20, 2013, Mazuma Holding's counsel informed Zicix counsel that

if the State Action did not settle soon it was considering the possibility of filing a

counterclaim against Zicix and a third party complaint against Williams and Pratt for

conspiring with Bethke and aiding and abetting Bethke.  Ebaugh Decl. Ex. M.  Because

the claims asserted against Zicix and its two directors in the threatened counterclaims and

cross claims were entirely without merit, it appears that Mazuma Holding was simply

attempting to extort a settlement from Zicix.

On October 17, 2013, Kramer and Mayo filed their joint appellant brief with an

intermediate state court of appeals in Houston, Texas.  Ebaugh Decl. Ex. N.  In their joint

appellant brief, Kramer and Mayo argued that the state court's exercise of personal

jurisdiction over them was reversible error.  Id.  Contrary to Mazuma Holding's

threatened counterclaim and cross actions, Kramer and Mayo stated as follows in the

"statement of facts" section of their joint appellant brief:

> Zicix made the mistake of entrusting its stock with a corrupt transfer
> agent, First National Trust, which was controlled by Bethke, who, in early
> 2009, contacted Mazuma to ask whether it would purchase Bederra stock.
> Bethke devised a plan to use blank stock certificates, which First National
> Trust held for Bederra, which were pre-printed with the signatures of two
> Bederra officers and directors, to issue shares to Mazuma.

> Id. at p. 3.

In other words, shortly after Mazuma Holding threatened to sue Zicix, Williams, and

Pratt for conspiracy and aiding and abetting Bethke in the State Action, Kramer and

Mayo backtracked on Mazuma Holding's threatened claims.  In essence, Kramer and Mayo acknowledged in their joint appellate brief that Bethke operated the scheme on his own and that Zicix did not conspire with Bethke.

Zicix timely filed its appellee brief in the state appellate proceeding.  Kramer and Mayo's reply brief in their appeal was due on November 20, 2013.  Ebaugh Decl. Ex. O.  However, Kramer and Mayo decided not to file a reply brief.  Ebaugh Decl. Ex. P.  Instead, the day after the deadline passed for filing their reply brief in the state court of appeals, Mazuma Holding filed a complaint initiating the instant lawsuit in this Court (the "Federal Action").  Compare Compl. with Ebaugh Decl. Ex. O.

In addition, Zicix settled with one of the defendants in the State Action on November 19, 2013.  Ebaugh Decl. Ex. G.  The settling defendant agreed to cooperate with Zicix as Zicix prepared the State Action for trial.  Ebaugh Decl. Ex. G.  Mazuma Holding knew about this settlement before it was disclosed via Zicix's supplemental disclosure to the parties in the State Action.  The fact that Zicix settled with another defendant who agreed to cooperate with Zicix, before first settling with Mazuma Holding, may have also motivated Mazuma Holding to initiate the Federal Action.

**Mazuma Holding Files a Vexatious Complaint to Initiate the Federal Action**

The Complaint in the instant Federal Action is essentially identical to the counterclaims and cross claims that Mazuma Holding had threatened to file against Zicix and its two directors in the State Action.  Compare Ebaugh Decl. Ex. M with Compl.  The only significant difference is that Mazuma Holding's Complaint in the Federal Action includes an additional claim for violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 that was not present in Mazuma Holding's

threatened counterclaim and cross claims drafted for filing in the State Action.  Compare Ebaugh Decl. Ex. M with Compl. ¶¶ 56 – 60.  When Mazuma Holding added the section 10(b) claim, this Court could acquire subject matter jurisdiction over the parties' dispute because a federal question was raised.

Mazuma Holding is Texas corporation with its principal place of business in Dallas, Texas.  Ebaugh Decl. Ex. Q.  All of the defendants in the Federal Action are Texas residents.  Comp. ¶¶ 18 – 20; Declaration of Graham R. Williams ("Williams Decl.") ¶¶ 2-3; Declaration of Herbert H. Pratt ("Pratt  Decl.") ¶¶ 2-3; Ebaugh Decl. Ex. R.  Consequently, this Court could not have asserted diversity jurisdiction in the instant Federal Action.

Presumably, Mazuma Holding saw other advantages to asserting a section 10(b) claim.  For instance, federal courts have exclusive jurisdiction over claims for violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  By adding a federal claim, transforming its state court counterclaims into a federal court complaint, and filing the complaint in New York federal court, it appears that Mazuma Holding is trying to accomplish what it could not lawfully accomplish in the State Action.  That is, move the dispute presented in the State Action from Texas to New York.

On November 25, 2013, four days after filing the instant Federal Action, the Securities Exchange Commission publicly issued the following findings of fact:

> 10. From about April 2009 through about June 2010, Mazuma Holding Corporation ("Mazuma Holding") and Kramer acquired over 1 billion shares of Bederra Corporation ("Bederra") in 21 separate transactions from the principal of Bederra's transfer agent, who had misappropriated the Bederra share certificates.

> 11. Mazuma Holding and Kramer purchased the Bederra shares at a significant discount from the then-prevailing market prices. The discount

made it highly likely that Mazuma Holding and Kramer could immediately re-sell the Bederra shares to the public for a short-term profit.

12. Mazuma Holding and Kramer resold the shares to the public for a profit of $934,404.

13. No registration statement was filed as to any of the Bederra shares offered and sold to Kramer and Mazuma Holding, and which Mazuma Holding and Kramer subsequently resold into the market, and no exemption from registration was applicable to these transactions.

14. The Respondents used the mails and other means of interstate commerce in connection with these offers and sales of . . . Bederra shares.

15. As a result of the conduct described above, Kramer, Mazuma Corporation, Mazuma Holding Corporation and Mazuma Funding Corporation violated Sections 5(a) and 5(c) of the Securities Act, which prohibit the direct or indirect sale or offer for sale of securities through the mails or interstate commerce unless a registration statement has been filed or is in effect.

Ebaugh Decl. Ex. B p. 3, ¶¶ 10-15.

The Securities Exchange Commission's findings of fact directly contradict Mazuma's Holding's claims in the instant Federal Action.  Moreover, Mazuma Holding's live cross claims in the State Action directly contradict its claims in the instant Federal Action.  In its cross claims against Bethke and First National Trust Company, Mazuma Holding has unequivocally stated, and continues to state, that Bederra, Williams, and Pratt had been duped by Bethke just as Mazuma Holding had been duped by Bethke.  For instance, according to Mazuma Holding's live pleadings in the State Action:

Bethke forged the name of Bederra's president and CEO on certifications falsely stating that Bederra was aware of the transactions and that the shares being sold to Mazuma would be fully-paid, non-assessable, and un-restricted. Neither Mazuma, nor Bederra's president and CEO, knew about these forgeries. Cross-Defendant Bethke forged Bederra's president and CEO's signature about 17 separate times on each of these acknowledgements, and Cross-Defendants provided these false certifications to Mazuma's broker.

8

Ebaugh Decl. Ex. S ¶ 46.

Both the SEC's findings of fact and Mazuma Holding's live cross claims in the State Action demonstrate that Mazuma Holding filed the instant Federal Action for no other reason than to harass Zicix and place an undue burden and expense upon Zicix its two directors.

**ARGUMENT**

**I.     THIS COURT SHOULD STAY THE FEDERAL ACTION PURSUANT TO THE <u>COLORADO RIVER</u> DOCTRINE**

In order to avoid inconsistent rulings by State and Federal Courts, avoid piecemeal litigation, and promote the interests of judicial economy, the Federal Action should be stayed pursuant to the <u>Colorado River</u> doctrine.   In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the Supreme Court stated, "in the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (<u>id.</u> at 817) a Federal District Court may decline to exercise its jurisdiction over a particular matter.   Courts have held that dismissal under Colorado River "is prudential, and is left to the Court's discretion." <u>Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.</u>, 850 F.Supp 176, 182 (E.D.N.Y. 1994) (citations omitted).   The "test is not subject to precise rules, but rather should 'be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" <u>Telesco v. Telesco Fuel and Masons' Materials, Inc.</u>, 765 F.2d 356, 362 (2d. Cir. 1985), quoting <u>Moses H Cone Memorial Hospital v. Mercury Const.</u>, 460 U.S. 1, 21 (1983).

**A.     The State Action and the Instant Federal Action are Parallel Suits**

The instant Federal Action and the State Action meet <u>Colorado River's</u> initial standard necessary for a stay as the two suits are parallel. The Courts have routinely ruled

that "[a] suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Bernstein, 850 F. Supp. at 184 (citations omitted).

> In Bernstein, the Court stated:
>
> > The fact that precisely the same claims are not made in the two proceedings, or that alternative forms of relief are sought in the two actions does not mean the actions are not duplicative or parallel. What matters is that the claims concern the same events, Telesco, supra, 765 F.2d at 362, and involve "sufficient overlap of subject matter," Alliance of American Insurers, 854 F.2d at 603. Indeed, even if the claims asserted in the two proceedings are not identical, if the state proceeding would permit adjudication of the claims asserted in the federal proceeding, the proceedings are parallel. Telesco, 765 F.2d at 362. Accord Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1175 (1942) (if the claims raised in the federal proceeding "could be satisfactorily adjudicated in [the state] proceeding," abstention may be warranted).
>
> Id.

There can be no doubt that Mazuma Holding's claims in the instant Federal Action are parallel to the causes of action in the State Action. One needs merely to review the parties' pleadings in both the State Action and Federal Action to see that these two Actions arise out of the same set of facts, to wit, Bethke's misappropriation of over one billion shares of Bederra stock. Significantly, the State Action would permit adjudication of all the claims asserted in the Federal Action except for the claim for violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

The fact that the section 10(b) claim cannot be litigated in the State Action is inconsequential because the claim is frivolous and vexatious. The section 10(b) claim is frivolous, among other reasons, because it is contrary to the SEC's findings of fact and Mazuma Holding's own judicial admissions in its cross action against Bethke. In addition, the section 10(b) claim is vexatious because it appears to have been brought for

tactical reasons, in the hope of securing a new judge in a different forum, and for retaliation for not settling prior to the appeal of the trial court's decision to assert personal jurisdiction over Kramer and Mayo.

Where an exclusively federal claim is frivolous or vexatious, a stay is still within the court's discretion.  Medema v. Medema Builders, Inc., 854 F.2d 210, 215 (7th Cir. 1988) ("Obviously, where the exclusively federal claim is frivolous, a stay is within the court's discretion."); Calvert Fire Ins. Co. v. American Mut. Reinsurance Co., 600 F.2d 1228, 1235 (7th Cir. 1979) ("In the absence of a legitimate claim to exclusive federal jurisdiction, we see no reason why a federal court should not stay its hand pending termination of a parallel state proceeding, at least where the district judge has found the federal suit to be vexatious").

"Abstention under Colorado River does not require identical parties in the parallel actions."  Bernstein, 850 F.Supp. at 184 (citations omitted).  Instead, "a suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Id. (quoting Calvert, 600 F.2d at 1229 n. 1).

Three of the parties in the instant Federal Action are also parties in the State Action.  The only two parties in the Federal Action that are not parties to the State Action are Williams and Pratt.  However, those two individuals are the officers and directors for Zicix, a party in both the Federal Action and the State Action.  Mazuma could have simply sued Zicix instead of Williams and Pratt to recover for the alleged wrongdoings of these two individuals.  Consequently, a claim against Williams and Pratt is substantially the same as a claim against Zicix.

Because substantially the same parties are contemporaneously litigating substantially the same issues in another forum, the Federal Action and the State Action are parallel proceedings.

**B.      The Six Factor Test Under <u>Colorado River</u> Provides Exceptional Circumstances for a Stay of Plaintiff's Claims in Federal Court**

"The relevant factors to be considered in determining whether federal abstention is appropriate in light of parallel state litigation include the following: '(1) assumption by federal or state court of jurisdiction over any res or property; (2) whether the federal forum is any less convenient to the parties than the state forum; (3) whether there is danger of piecemeal litigation; (4) the order of the two suits; (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court is inadequate to protect the plaintiff's rights.'  Courts may also consider 'the vexatious and reactive nature of either the federal or state litigation' as part of its analysis."  <u>Steinberg v. Nationwide Mut. Ins. Co.</u>, 418 F.Supp.2d 215, 224 (E.D.N.Y. 2006) (Spatt, J.) (citations omitted).  As set forth below, the <u>Colorado River</u> factors overwhelmingly support a stay.

**1.      No Assumption by Federal or State Court of Jurisdiction over any Res or Property**

Neither the state court nor this Court has jurisdiction over any res or property. Such absence weighs only "slightly" against abstention or a stay.  <u>Goldentree Asset Management, L.P. v. Longaberger Co.</u>, 448 F.Supp.2d 589, 593 (S.D.N.Y. 2006).

**2.      The Federal Forum is Less Convenient to the Parties than the State Forum**

The convenience factor favors Texas for several reasons.  All of the parties in the Federal Action are residents of Texas.  Zicix is a Nevada corporation with its principal place of business in Houston, Texas.  Mazuma Holding is a Texas corporation with its

principal place of business in Dallas, Texas.  Ebaugh Decl. Ex. Q.  In addition, several third-party witnesses are in Texas.  On balance, the convenience factor strongly favors Texas.

### 3.        There is a Danger of Piecemeal Litigation

Like the State Action, the Federal Action is centered around Bethke's misappropriation of Bederra securities.  Consequently, unless the instant Federal Action is stayed, the federal and state courts would be considering the same issues and would likely hear similar pretrial motions, evidence, and witnesses.  Allowing such similar actions to proceed in the federal and state courts under such circumstances would waste judicial resources and invite duplicative efforts. Moreover, the possibility exists that the federal and state courts could come to conflicting decisions concerning the same events. This factor weighs heavily in favor of abstention.  E.g., Foxfield Villa Associates, LLC v. Regnier, 918 F.Supp.2d 1192, 1199 (2013).

### 4.        The State Action Preceded the Federal Action

The State Action, which was filed over a year before the Federal Action, is far more advanced.  The parties have participated in discovery involving the exchange of tens of thousands of documents.  The state court has entered an interlocutory default judgment against Bethke.  Other interlocutory orders have been entered, one of which is being appealed with oral argument in the court of appeals scheduled for February 04, 2014.  The state court has entered an order enforcing the subpoena duces tecum against Bethke.  At the moment, trial in the state court is set for April 7, 2014.  In contrast, the present motion is the only substantial proceeding in the instant Federal Action.

The filing order and progress in the State Action weigh strongly in favor of a stay. See, e.g., Telesco, 765 F.2d at 363 (where the concurrent state court actions consisted of several years of proceedings including, several interlocutory decisions, and a preliminary injunction, the Second Circuit found, "[w]ith this history, it hardly seems wise to permit [the] plaintiff to start anew in federal court").

### 5. Inconsequential that a Federal Question Exists in the Federal Action

Ordinarily, the presence of a federal question in a case weighs heavily against abstention. See Colorado River, 424 U.S. at 815 n. 21.  However, where an exclusively federal claim is frivolous or vexatious, as in this case, a stay is still within the court's discretion.  Medema, 854 F.2d at 215 ("Obviously, where the exclusively federal claim is frivolous, a stay is within the court's discretion."); Calvert, 600 F.2d at 1235 ("In the absence of a legitimate claim to exclusive federal jurisdiction, we see no reason why a federal court should not stay its hand pending termination of a parallel state proceeding, at least where the district judge has found the federal suit to be vexatious").

### 6. The Texas Courts are Adequate to Protect Mazuma Holding's Rights

This court must determine whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone, 460 U.S. at 28.  There is no doubt that the State Action will adequately protect Mazuma Holding's procedural and substantive rights and provide a fair forum that will promptly resolve its claims. There is no conceivable jeopardy or prejudice to Mazuma Holding's rights should its state law claims be decided by the Texas court rather than this Court.  Accordingly, the sixth factor weighs in favor of a stay.

14

### 7.    Vexatious or Reactive Nature of the Instant Federal Action

"[S]ome courts considering whether to abstain under <u>Colorado River</u> have found 'that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation.'" <u>First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.</u>, 862 F.Supp.2d 170, 194 (E.D.N.Y. 2012). "In <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 363 (2d Cir.1985), for example, the Second Circuit concluded that abstention was appropriate where the same party was the plaintiff in both the state and federal actions, and the plaintiff had filed the federal action after suffering some failures in the earlier state action." <u>First Keystone</u>, 862 F.Supp.2d at 194.

In this instance, Mazuma Holding filed the Federal Action after suffering some failures in the State Action.  For instance, Mazuma Holding's motion to dismiss the State Action for <u>forum non conveniens</u> was recently denied.  In addition, the sole owner and officer of Mazuma Holding recently suffered a setback in the State Action when the trial court decided to assert personal jurisdiction over him and Mazuma Holding's finder. Finally, the State Action did not settle after Mazuma Holding made its extortionate threat to file a frivolous counterclaim and cross claims against Zicix and its two directors.

Mazuma Holding's willingness to commence a federal lawsuit halfway across the nation for strategic purposes is vexatious, increases the risk of piecemeal litigation, and wastes the resources of this Court and others that must address Mazuma Holding's frivolous claims.

## II.    THIS COURT SHOULD TRANSFER VENUE TO THE SOUTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(A)

Even if the instant Federal Action is not stayed under the Colorado River doctrine, it should nonetheless be transferred to the Southern District of Texas for the convenience of the parties and witnesses.  Section 1404 permits district courts to transfer cases for "the convenience of parties and witnesses" if it serves "the interests of justice." 28 U.S.C. § 1404(a).  Securities fraud cases are frequently transferred under § 1404(a) to the jurisdiction where the defendant company is located because the core issue of whether the company made false statements with fraudulent intent typically depends on witnesses and proof located at the company's offices.  E.g., Blass v. Capital Int'l Security Group, No. 99-CV-5738, 2001 WL 301137, at *5-6 (E.D.N.Y. March 23, 2001) (transferring securities case and holding that "the purchase of shares in New York does not make this district a forum which has significant contact with the operative facts"); Plotkin v. IP Axess, Inc., 168 F. Supp. 2d 899, 903 (N.D. Ill. 2001) (transferring securities fraud case to forum where defendant was located and observing that "[t]he material events in this case are not the actual purchases of stock or the receipt of the press releases. Rather, the material events are the creation and dissemination of the press releases, all of which occurred in Plano, Texas").  Indeed, this Court has acknowledged that while § 1404(a) does not impose a per se rule, "as a practical matter, such transfers are routine."  In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). As set forth below, the § 1404 factors overwhelmingly support transfer.

### A.    The Southern District of Texas Is a Proper Venue

The first step in a § 1404 venue analysis is to "determine whether the action 'might have been brought' in the forum to which the movant seeks to have the case

16

transferred." Wyler-Wittenberg v. MetLife Home Loans, Inc., 899 F.Supp.2d 235, 248 (E.D.N.Y. 2012) (Spatt, J.). That test is easily satisfied here. The Southern District of Texas is a proper venue given that Zicix is headquartered there, numerous witnesses reside there, and numerous events occurred in that district. See Williams Decl. ¶¶ 2-3; Pratt Decl. ¶¶ 2-3; Ebaugh Decl. ¶¶ 21-22; see 15 U.S.C. § 77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendants may be found.").

**B.** **The Relevant Public and Private Factors Strongly Support Transfer**

The second step is to "determine whether the transfer promotes convenience and justice." Wyler-Wittenberg, 899 F.Supp.2d at 248. "Courts generally weigh a number of factors in making the latter decision, none of which is singly dispositive." Id. The criteria include: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the district court's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice." Id. at 248 - 49.

**1.** **Convenience of the Witnesses**

"The convenience of the witnesses is probably the single most important factor in the transfer analysis." Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006) (Spatt, J.). "In considering the convenience of the witnesses, the

Court should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'" Id.

Bethke is the most material witness in this case.  After all, it is undisputed that the State Action and the Federal Action arose directly from Bethke's misappropriation of over a billion shares of Bederra stock.  Significantly, Bethke resides in Houston, Texas. Ebaugh Decl. ¶ 22.

The number of witnesses in this case and their residencies are summed up as follows:

| Number of Witness | Residency |
|---|---|
| 12 | Texas |
| 7 | New York |
| 6 | Utah |
| 2 | Nebraska |
| 1 | New Jersey |
| 1 | California |
| 1 | Georgia |
| 1 | Oregon |
| 1 | Unknown |

Ebaugh Decl. ¶ 22.

On balance, the convenience of the witnesses weighs in favor of transfer to Texas. If the case is transferred, twelve witnesses in Texas will be relieved of traveling entirely. In addition, because Mazuma Holding maintains its principal place of business in Dallas, Texas, it will be more convenient for Mazuma Holding and its employees to travel to Houston than to New York.  Ebaugh Decl. Ex. Q.  Although at least seven individual witnesses live in New York, it would only be slightly less convenient for Kramer and

May to travel to Houston because Mazuma Holding's principal place of business is in Dallas.  Ebaugh Decl. Ex. Q.

Accordingly, this important factor favors a transfer to Texas.

### 2.      Convenience of the Parties

Mazuma Holding will be obligated to travel whether this action is heard in the Eastern District of New York or the Southern District of Texas.   After all, Mazuma Holding's principal place of business is in Dallas, Texas.  Ebaugh Decl. Ex. Q.  If the case is transferred to the Southern District of Texas, the distance that Mazuma Holding will have to travel will be much shorter than it if this case remains in the Eastern District of New York.

Obviously, the Southern District of Texas is more convenient to Defendants Pratt, Williams and Zicix (hereinafter occasionally referred to as the "Zicix Defendants") because they all reside in or around the Houston, Texas, area.  Williams Decl. ¶¶ 2-3; Pratt Decl. ¶¶ 2-3.  Thus, if the action remains in New York, all remaining parties will be required to travel.  The Zicix Defendants would be relieved of this burden if the action is transferred to Texas.

Accordingly, this factor weighs in favor of transferring this action to the Southern District of Texas.

### 3.      Locus of Operative Facts

As in any securities-fraud action, Plaintiff's claims are based on Defendants' alleged misrepresentations and omissions, all of which originated in Texas. "Misrepresentations and omissions are deemed to 'occur' in the district where they are

transmitted or withheld, not where they are received." In re Nematron Corp. Securities Litigation, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (citation and internal quotation marks omitted).  Considering all the underlying facts, this factor weighs in favor of transfer . Cf. Blass, 2001 WL 301137, at *5 (transferring securities-fraud class action to Florida in part because misrepresentations allegedly made in New York "pale in magnitude to the misrepresentations and omissions attributable to defendants' alleged activities in Florida").

Accordingly, this factor weighs in favor of transferring this action to the Southern District of Texas.

### 4.  Availability of Process to Compel the Attendance of Unwilling Witnesses

The Zicix Defendants plan to call non-party witnesses from Texas such as Robert Little, Palmer Dideion, Lana Dieringer, and Hank Vanderkam to support their defense in this action.  However, none of these witnesses would be subject to process in the Eastern District of New York. See Fed. R. Civ . P. 45(c)(3)(B)(ii) (limiting to 100 miles district courts' power to compel nonparty witnesses to travel).

Accordingly, this factor weighs in favor of transferring this action to the Southern District of Texas.

### 5.  Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

"Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession," Blass, 2001 WL 301137, at *6; that is sure to be the case here.  Most, if not all, of Zicix

records are located in Texas and most of the material witnesses reside in Texas.  Williams Decl. ¶ 4; Ebaugh Decl. ¶¶ 21-22.

Accordingly, this factor weighs in favor of transferring this action to the Southern District of Texas.  See, In re McDermott Int'l, Inc., Sec. Litig., 08 CIV. 9943 (DC), 2009 WL 1010039, at *3-5 (S.D.N.Y. Apr. 13, 2009) (transferring securities fraud case to Southern District of Texas where defendant company had its offices, where likely material witnesses reside, and where the allegedly fraudulent statements would have been made); Twinde v. Threshold Pharms., Inc., 07 CIV. 6227 JSR, 2007 WL 2746814, at *2 (S.D.N.Y. Sept. 17, 2007) (transferring securities fraud case to district where company and witnesses were located); Blass, 2001 WL 301137, at *5-6 (transferring securities case and holding that "the purchase of shares in New York does not make this district a forum which has significant contact with the operative facts"); In re Nematron, 30 F. Supp. 2d at 404 (transferring securities action to location where alleged misrepresentations were made); Rentea v. Janes, No. A-11-CV-031-LY, 2011 WL 3022568, at *3-4 (W.D. Tex. July 22, 2011) (transferring securities case to district where issuer was located because that district "has more of an interest in this particular case since 'it has a substantial interest in policing the conduct of businesses that operate within its jurisdiction'") (citation omitted; magistrate recommendation approved by U.S. District Judge and case transferred to Central District of California); SEC v. Rizvi, No. 04:09-CV-371, 2010 WL 3949311, at *7-12 (E.D. Tex. July 2, 2010) (transferring securities case to Central District of California where defendant was located and where preponderance of evidence and witnesses were located); Culp v. Gainsco, Inc., No. 0320854CIV, 2004 WL 2300426, at *4-6 (S.D. Fla. Oct. 1, 2004) (transferring securities fraud case to Northern District of

Texas because witnesses and documents relating to scienter were located at defendant's physical headquarters); Plotkin, 168 F. Supp. 2d at 903 (N.D. Ill. 2001) (transferring securities fraud case to forum where defendant was located and observing that "[t]he material events in this case are not the actual purchases of stock or the receipt of the press releases. Rather, the material events are the creation and dissemination of the press releases, all of which occurred in Plano, Texas").

### 6.    Relative Means of the Parties

"Where an apparent disparity exists between the parties, such as when an individual sues a large corporation, the court should consider the relative means of the parties." Blass, 2001 WL 301137, at *6.  Such a disparity exists in the instant Federal Action.

Due to the fraud of Bethke, Mazuma Holding, and others, Defendant Zicix has been forced to wind up its affairs.  Zicix's principal place of business has always been in Houston, Texas, and Zicix is winding up its affairs in the same location.  Williams Decl. ¶¶ 1-2; Pratt Decl. ¶¶ 1-2.  Consequently, it would be unduly burdensome on Zicix's finances to defend itself in a court over 1,500 miles away from where it is winding up its affairs.

Before Zicix was forced to wind up its affairs, Defendants Williams and Pratt relied upon their income from serving as president and vice-president, respectively, for Zicix to pay their living expenses.  Williams Decl. ¶ 3; Pratt Decl. ¶ 3.  Now that Zicix is winding up its affairs, Williams and Pratt must rely on savings and/or retirement benefits to pay their living expenses.  Williams Decl. ¶ 3; Pratt Decl. ¶ 3.  At the same time, Williams and Pratt, as Zicix's two directors, have the responsibility to wind up Zicix's

affairs.   Williams Decl. ¶ 3; Pratt Decl. ¶ 3.   Williams and Pratt both live in Texas. Williams Decl. ¶ 3; Pratt Decl. ¶ 3.   Consequently, it would be unduly burdensome on Williams and Pratt's finances to defend this Federal Action in New York.   Williams Decl. ¶ 3; Pratt Decl. ¶ 3.

In the State Action, Mazuma Holding has demonstrated that it has the finances to retain local counsel in Texas to represent its positions in both the state trial court and the state appellate court.  If the instant Federal Action was transferred to Texas, Mazuma Holding would presumably hire the same local counsel that is representing it in the State Action to pursue its claims in the instant Federal Action.

In sum, the apparent means of Mazuma Holding in comparison to the lack of means of the Zicix Defendants warrants the transfer of this action to the Southern District of Texas.

### 7.      District Court's Familiarity with Governing Law

"[I]t is judicially desirable to have cases decided by a court familiar with the substantive law to be applied." Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 991 (E.D.N.Y. 1991) (Spatt, J.).  As expressly acknowledged in the Complaint, Texas law governs all of the state law claims that Mazuma Holding has made in the instant Federal Action.

In light of the Texas state law claims that have been alleged, this factor favors a transfer to the Southern District of Texas.

### 8.      Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the

defendant." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D .N.Y. 1998). "However, when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case, that weight is diminished." Cali v. East Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 292 (E.D.N.Y. 2001) .

Because Mazuma Holding's principal place of business is in Dallas, Texas, Mazuma Holding's choice of form in New York should be given less weight. E.g., Hernandez, 761 F.Supp. at 991 (holding that "the mere fact that the plaintiff chose New York is of less significance" because plaintiff did not move to New York and receive medical treatment there until after receiving his injuries in Florida).

### 9.    Efficiency and the Interest of Justice

Judicial economy further warrants transfer to the Southern District of Texas. Even if this case cannot proceed before the state court presiding over the State Action, transfer to the Southern District of Texas "would, at a minimum, consolidate any discovery in the two actions to the same geographical area, thereby saving time and expense for the overlapping parties, witnesses, and their attorneys." In re Global Cash Access Holdings, Inc. Securities Litigation, No. 08 Cv. 3516, 2008 WL 4344531, *8 (S.D.N.Y. Nov. 17, 2000) (citing In re Collins & Aikman, 438 F.Supp.2d at 398–99 (finding that ninth venue factor favored transfer of securities litigation when "facts and witnesses overlap[ped]" with bankruptcy proceeding and state-law fraud action already pending in transferee district); Goggins v. Alliance Capital Mgmt., L.P., 279 F.Supp.2d 228, 234– 35 (S.D.N.Y.2003); Bombardier Capital, Inc. v. Solomon, 00 Cv. 848(RMB), 2000 WL 1721138, at *6 (S.D.N.Y. Nov. 17, 2000) (noting that transfer of federal

litigation to "same geographical area" as pending state case would facilitate trial efficiency)).

## CONCLUSION

For the foregoing reasons, the Court should stay this action under the <u>Colorado River</u> doctrine, or in the alternative, transfer this case to the Southern District of Texas and grant the Defendants Graham R. Williams and Zicix Corporation all other relief to which they are justly entitled.

Dated: Houston, Texas
      December 31, 2013

Respectfully submitted,

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh (admitted *pro hac vice*)
NELSON S. EBAUGH, P.C.
2777 Allen Parkway, Suite 1000
Houston, TX 77019
Ph    (713) 752-0700
Fax   (713) 739-0500
nebaugh@ebaughlaw.com

*Counsel for Defendants Graham R.*
*Williams and Zicix Corporation*