**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MAZUMA HOLDING CORP.,

                     Plaintiff,

            -against-

STEVEN H. BETHKE, HERBERT H. PRATT,
GRAHAM R. WILLIAMS, AND ZICIX
CORPORATION,

                  Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
13-cv-6458 (ADS)(GRB)

**APPEARANCES:**

**Naidich Wurman Birnbaum & Maday**
*Attorneys for the Plaintiff*
80 Cuttermill Road, Suite 410
Great Neck, NY 11021
      By:   Richard S. Naidich, Esq., of Counsel

**Loewinsohn Flegle Deary, L.L.P.**
*Attorneys for the Plaintiff*
12377 Merit Drive, Suite 900
Dallas, TX 75251-2224
      By:   Alan S. Loewinsohn, Esq
              Carole E. Farquhar, Esq.
              Kerry F. Schonwald, Esq., of Counsel

**Nelson S. Ebaugh, P.C.**
*Attorneys for the Defendants Herbert H. Pratt, Graham R. Williams, and Zicix*
*Corporation*
2777 Allen Parkway, Suite 1000
Houston, TX 77019
      By:   Nelson S. Ebaugh, of Counsel

**NO APPEARANCES:**

*Steven H. Bethke*

**SPATT, District Judge.**

On November 21, 2013, the Plaintiff Mazuma Holding Corp (the "Plaintiff" or "Mazuma"), a holding company, commenced this action against Steven H. Bethke, Herbert H. Pratt, Graham R. Williams, and the Zicix Corporation ("Zicix") (collectively the "Defendants") alleging violations of federal securities law and Texas State law.

On December 31, 2013, Williams and Zicix moved for an order staying this action under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), or, in the alternative, transferring venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) on the grounds, among others, that there is a parallel action pending in Texas State court. On January 21, 2014, Mazuma (1) cross-moved for leave to file its first amended complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a) and (2) cross-moved to strike certain evidence relied upon by Williams and Zicix in support of their motion for a stay.

The three pending motions are each opposed and fully briefed.  For the following reasons, the Court (1) denies Mazuma's motion to strike; (2) grants Mazuma's motion to amend; and (3) denies Williams and Zicix's motion for a stay or to transfer venue.

## I.     BACKGROUND

Unless stated otherwise, the following facts are drawn from the original complaint and construed in a light most favorable to the Plaintiff, Mazuma.

A.  <u>The Parties and Other Relevant Individuals</u>

Mazuma is a non-bank holding company that makes investments in other entities.  Mazuma concedes that it is a Texas corporation with its principal place of business in Texas.  However, Mazuma also has an office located in Great Neck, New York.

The Non-party Curt Kramer is Mazuma's sole officer.  The Non-party Carlos Mayo is the sole "finder" for Mazuma, though it is not clear what that role entails.

Zicix, a Nevada corporation, is the successor company of Bederra Corporation, a nano-cap company described in more detail below.

At all relevant times, Williams was the President and Chief Executive Officer ("CEO"), as well as a director, of Bederra and currently serves in the same role for Zicix.  Williams is a Texas resident.

At all relevant times, Pratt was Bederra's Vice President, as well as a director.  Pratt is a Texas resident.

Bethke was also a director of Bederra and is a Texas resident

B.  <u>The Underlying Facts</u>

Mazuma invested in Bederra, and was well-known to the Defendants.  Mazuma's business strategy at the time of the stock purchases at issue was to invest in publicly-traded, nano-cap companies, such as Bederra, whose securities are traded on the "Pink Sheets."  Nano-cap companies are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms.

3

Mazuma provided capital to these companies as an investment in return for shares purchased at a discount from the market price.

In 2008, Mazuma invested more than $140,000 in Bederra by purchasing directly from Bederra blocks of shares at a discount.  Williams instructed Mazuma to coordinate the purchases with Bethke, which Mazuma did.  On each occasion, Williams directed, in writing, First National Trust Company, Inc. ("First National Trust"), Bederra's transfer agent, to issue stock certificates to Mazuma pursuant to the terms of the investment.  Those stock certificates contained the signature of Williams, then the Secretary of Bederra.

Beginning in early 2009, Mazuma again purchased blocks of Bederra shares, this time directly from Bethke.  Mazuma purchased a total of approximately 1.139 billion shares of Bederra stock from Bethke between January 2009 and May 2010 (the "Mazuma Shares").  Bethke represented that the shares were duly issued, unrestricted, and freely tradeable.  In advance of each transaction, Mazuma received several documents signed by Williams certifying that Bethke held good title to the shares and that Williams and the company had authorized the pending share sales to Mazuma.  On each occasion, Mazuma received supposedly authentic Bederra stock certificates containing the signatures of Williams and Pratt.

However, Mazuma contends that, to conceal Bethke's stock sales and to lure Mazuma into believing that they were legitimate, the Defendants made several material misrepresentations related to the authenticity of the shares and the authority of Blake.  The Defendants allegedly manufactured business records and

4

signed stock certificates to make it appear as if Mazuma's shares were not restricted, authorized, and freely tradeable.

During the relevant period, the volume of trading in Bederra stock exceeded the number of free-trading shares issued and outstanding (the "float") due to the introduction of the Mazuma Shares into the market.

Mazuma also alleges that, during the relevant time period, Bederra had no financial reporting requirements, but nonetheless filed periodic reports and disclosures on an electronic quotation system.  Bederra allegedly made at least 22 filings on the Pink Sheets between May 28, 2008 and December 22, 2009, and issued more than 60 press releases between March 2008 and January 2011. According to Mazuma, Bederra routinely represented in its filings with the Pink Sheets the numbers of shares authorized and outstanding, as well as the public float. Mazuma contends that Bederra's numerous public disclosures and press releases demonstrate that Williams and Pratt were monitoring and publicly disclosing the float of Bederra securities and the numbers of authorized and restricted shares.

Mazuma alleges that Zicix, Williams, and Pratt knew or were reckless in not knowing that Bethke was issuing shares to Mazuma.  Had Williams and Pratt monitored the volume of trading in Bederra stock, they would have seen that the volume in Bederra stock often exceeded the "represented" float.  For example, on two-trading days – January 12 and January 13, 2010 – the volume of trading in Bederra stock allegedly exceeded the float as reported two weeks earlier by more than 1,000,000 shares.  Further, on January 29, 2010, Bederra reported that the float

5

of Bederra stock was 404,827,453, even though the volume of trading in a single trading day on January 26, 2010 – three days earlier – exceeded that amount.

Mazuma further asserts that, in an effort to cover up the presence of the fraudulent shares, Pratt and/or Williams caused Bederra to continually increase the number of authorized shares – eventually increasing the number of authorized shares on the market by more than 1500 percent in an apparent effort to conceal the Defendants' fraud.  Pratt and/or Williams also allegedly caused Zicix to ratify the issuance of the Mazuma Shares on October 29, 2010 as part of a cover-up of the Defendants' role in the Mazuma Share issuances.

C.   Texas State Court action

In what Mazuma characterizes as an attempt to deflect increasing regulatory pressure, on August 31, 2012, Zicix filed a civil action in the State of Texas against Mazuma and several other defendants, alleging that the Mazuma Shares were not authorized by Bederra (the "State Lawsuit").

In the State Lawsuit, three defendants, including Kramer and Mayo, unsuccessfully challenged the trial court's personal jurisdiction.  Kramer and Mayo are currently taking interlocutory appeals of the denials of their motions to dismiss for lack of personal jurisdiction.  Mazuma asserts that the defendants in the State Lawsuit that are challenging the personal jurisdiction of the Texas trial court have not engaged in any "merits-based" discovery and that there has been no depositions of any party or non-party witness.

In June 2013, the state trial court entered an interlocutory judgment against Bethke and two companies controlled by him.

At some point, Mazuma moved to dismiss the State Lawsuit for *forum non conveniens* and/or have that action refiled in New York.

On August 26, 2013, the Texas trial court denied Mazuma's motion.

On January 9, 2014, Mazuma and others filed a joint motion for continuance of the State Lawsuit.  Bederra, the plaintiff in the State Lawsuit, agreed that the State Lawsuit should be continued and its counsel has requested a Fall 2014 trial date while the defendants in the State Lawsuit have proposed any date after January 19, 2015 due to conflicts with other cases.

D.  The SEC Proceeding

On November 25, 2013, the SEC instituted cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1033 (the "Securities Act") against Mazuma and related parties.  Of relevance here, the SEC and Mazuma reached a settlement, the terms of which are described later (the "Cease-and-Desist order").

E.  The Present Action

Meanwhile, on November 21, 2013, Mazuma brought the instant action alleging violations of federal securities law and Texas State law.  In particular, Mazuma alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

The Court notes that Zicix (previously Bederra), Bethke, and Mazuma are parties in both this action and in the State Lawsuit, while Williams and Pratt are not parties in the State Lawsuit.  Bethke has not answered or appeared in this action.

On December 31, 2013, Williams and Zicix moved to stay this action under the <u>Colorado River</u> doctrine, or, in the alternative, transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).   In support of the motion to stay, Williams and Zicix submitted a declaration of its counsel, Nelson S. Ebaugh, which makes reference to the Cease-and-Desist Order.

On January 21, 2014, Mazuma cross-moved under Fed. R. Civ. P. 15(a) for leave to file an amended complaint, seeking to withdraw its state causes of action. Mazuma also sought to add certain allegations, including as follows:

> 55.   Between January 9, 2009 and May 24, 2010, as aforesaid, Mazuma purchased the alleged shares at issue from Bethke for a purchase price paid to Bethke in the total sum of $371,375.00.
>
> 56.  In truth and fact, the alleged shares had a value of zero for the reason set forth above such that Mazuma suffered damages of $371,375.00 representing the difference in value of the alleged shares (0) and the amount paid by Mazuma, to wit, $371,375.00.
>
> 57.  Mazuma sold the alleged shares it had purchased from Bethke for the total sum of $1,305,780.00 such that it had an apparent and illusory profit of $934,405.
>
> 58.  Upon due investigation by the Securities and Exchange Commission it was determined that although it had engaged in no wrongdoing, Mazuma would be compelled by law to disgorge the apparent and illusory profit of $934,405 together with interest of $109,865.00 to the United States Treasury.
>
> 59.  The Securities and Exchange Commission also imposed civil money penalties upon Mazuma in connection with the purchase of the alleged shares of sale from Bethke.
>
> 60. In addition, Mazuma paid or incurred legal fees and other expenses that were reasonable and necessary in the sum of at least $400,000 in connection with the said purchase all none of which would have been incurred but for the defendants' wrongdoing.

(Amend. Compl. ¶ 55-60.)

Also, on January 21, 2014, Mazuma moved to strike, among other things, (1) portions of the declarations submitted by Williams and Pratt in support of the motion to stay and (2) the Cease-and-Desist Order as inadmissible under Federal Rule of Evidence ("Fed. R. Evid.") 408.

On February 26, 2014, Pratt joined in the motion for a stay or to transfer venue.

The three pending motions are opposed and fully briefed.  The Court will first address the motion to strike; then the motion for leave to file an amended complaint; and finally the motion to stay or transfer this action.

## II.   DISCUSSION

A.  The Motion to Strike

"The resolution of a motion to strike is left to the sound discretion of the district court." Dunkin' Donuts Franchised Restaurants LLC v. Got–A–Lot–A– Dough, Inc., No. 07-cv-2303, 2008 WL 4861968, at *2 (E.D.N.Y. Oct. 31, 2008) (citing EEOC v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004)).  As a rule, "[m]otions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed." Azikiwe v. Nigeria Airways Ltd., No. CV-03-6387 (FB)(CLP), 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006).

1.  Williams' and Pratt's Declarations

In this case, Mazuma objects to and asks the Court to strike the fifth sentence of paragraph 3 of the declaration submitted by Williams and Pratt in support of the motion for a stay.  In their respective declarations, Williams and Pratt

9

make the same assertion:  "[I]t would be unduly burdensome on my finances to defend the above-captioned lawsuit in New York."

Mazuma does not argue that Williams and Pratt lack personal knowledge of their finances, or that such facts would not be helpful to the Court in evaluating the relative means of the parties.  Rather, according to Mazuma, these statements are unsupported conclusions because neither Williams nor Pratt discloses the extent of his savings; his social security retirement benefits; living expenses; or any assets available to him.

"An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general." Cusamano v. Sobek, 604 F. Supp. 2d 416, 456 (N.D.N.Y. 2009).  However, "to the extent that the[se] Declarations contain conclusory or cookie-cutter statements, these flaws go to the credibility of the declarants and, by extension, the weight of the evidence, but do not warrant striking the statements outright." Lujan v. Cabana Mgmt., Inc., 284 F.R.D. 50, 63 (E.D.N.Y. 2012); Mueller v. Towers, No. 3:10–CV–1093 (WWE), 2010 WL 4365771, at *2 (D. Conn. Oct. 25, 2010) (denying motion to strike for "lack of detail," as that issue went to credibility); Colabufo v. Cont'l Cas. Co., No. 04-CV-1863 (TCP)(MLO), 2006 WL 1210919, at *6 (E.D.N.Y. Apr. 27, 2006) ("[L]ack of certain specific details or arguably vague or conclusory statements will not render [p]laintiffs' affidavits inadmissible, but instead affects the weight and credibility of the testimony.") (collecting cases).  Accordingly, the Court denies that portion of Mazuma's motion to strike the subject sentences in Williams and Pratt's declarations.

2.  <u>The SEC Cease-and-Desist Order</u>

Mazuma also seeks to strike the Cease-and-Desist Order as inadmissible

under Fed. R. Evid. 408, which bars the admission of most evidence of offers of

compromise or settlement. <u>See</u> <u>Rein v. Socialist People's Libyan Arab Jamahiriya</u>,

568 F.3d 345, 351-52 (2d Cir. 2009).  The Cease-and-Desist Order specifically

states that it is:

> [s]olely for the purpose of these proceedings and any other
> proceedings brought by or on behalf of the Commission, or to which
> the Commission is a party, and without admitting or denying the
> findings herein, except as to the Commission's jurisdiction over
> them and the subject matter of these proceedings, which are admitted
> . . .

The Cease-and-Desist Order also states that "[t]he findings herein are made

pursuant to [the] Offer of Settlement and are not binding on any other

person or entity in this or any other proceeding."

In <u>Securities & Exchange Commission v. Pentagon Capital Management</u>

<u>PLC</u>, No. 08 Civ. 3324 (RWS), 2010 WL 985205 (S.D.N.Y. March 17, 2010),

Judge Sweet found that a consent decree with the SEC was admissible under Rule

408 because it was being offered not "to establish liability against the parties who

settled [,] but to offer evidence as a shield" against the SEC's allegations. <u>Pentagon</u>

<u>Capital</u>, 2010 WL 985205, at *4.

Here, as in <u>Pentagon Capital</u>, the settlement agreement is not being offered

to "prove liability for" or the "invalidity of" claims "against the parties who settled

but" rather "to offer evidence as a shield" against Mazuma's claims. <u>See</u> <u>id.</u>  "Such

evidence is not precluded by Rule 408 because it is being offered for a purpose

11

other than to establish liability." Id. (citation omitted); see United States v. Gilbert, 668 F.2d 94, 97 (2nd Cir. 1981) (the court allowed an earlier consent decree between the defendant and the SEC to be introduced to show the defendant's awareness of SEC requirements); cf. In re Platinum and Palladium Commodities Litig., 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (prohibiting the plaintiffs from relying on an order of the Commodity Futures Trading Commission ("CFTC") to plead the "underlying facts of liability" because "[a]lthough the CFTC Order included certain factual findings, it nevertheless was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding.").

"Moreover, the fact that an agency or the parties before it provide by rule or stipulation that the factual findings are not binding and disclaim their viability in other proceedings does not control their admissibility in federal civil proceedings, wherein the admissibility of evidence is governed by the Federal Rules of Evidence . . . ." Pentagon Capital, 2010 WL 985205, at *3 (citing Option Resource Group v. Chambers Development Co., 967 F. Supp. 846, 851 (W.D. Pa. 1996))

Accordingly, the Court denies that part of Mazuma's motion to strike the Cease-and-Desist order and any references thereto. However, the Court notes that it "is not ruling that information about and documents from the regulatory investigations and settlements are admissible or may otherwise be relied on in support of any future motions. The propriety of any future use of these materials must be determined in the context of the specific issue before the Court." Anschutz Corp. v. Merrill Lynch & Co. Inc., 785 F. Supp. 2d 799, 821 (N.D. Cal. 2011).

3.   The Ebaugh Declaration

Mazuma also objects to and asks the Court to strike the second and fourth

sentences of Paragraph 21 of Ebaugh's declaration, which state, respectively, that

"[t]he majority of likely witnesses with knowledge of material facts regarding the

matters set forth in the Complaint are located in the Houston, Texas, area" and

"[t]he vast majority of relevant documents are likewise located in or around the

Houston, Texas, area." (Ebaugh Decl. at ¶ 21.)  Mazuma also seeks to strike

paragraph 22 of Ebaugh's declaration, which lists potential witnesses that are

supposedly most likely to have knowledge regarding the events at issue in this

litigation; their location; job title; and anticipated subject of testimony.  According

to Mazuma, Ebaugh lacks personal knowledge about the location of Mazuma's

documents, the quantity of such documents, or the location of witnesses.

Under Fed. R. Evid. 602, "[a] witness may not testify to a matter unless

evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d

Cir. 1986) (holding that it was improper for district court to consider "conclusory

and hearsay" statements in an attorney affidavit where the statements were not

based upon personal knowledge).

Here, were the above-mentioned sections of Ebaugh's declaration viewed as

relating to the location or quantity of Mazuma's documents, it is not clear how

Ebaugh would possess personal knowledge of these matters.  However, in the

Court's view, Ebaugh makes no assertion about Mazuma documents in particular

that are beyond his personal knowledge.

13

To the extent some of the assertions in Ebaugh's declaration are poorly documented in the record, this is not a reason to strike those assertions, but rather a fact affecting their weight and credibility.  Indeed, nothing in the Federal Rules of Evidence or the case law requires a court to strike any portion of an affidavit that is not properly supported. See Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999), abrog't on other grnds. by Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000) ("a court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.").   Rather, "[a] court may decline to conduct a line-by-line analysis and instead simply disregard the allegations that are not properly supported." Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist., 05 CIV 09087 (PGG), 2009 WL 1576467, at *7 (S.D.N.Y. June 2, 2009), aff'd sub nom. R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 371 F. App'x 231 (2d Cir. 2010).

Taking this approach, the Court declines to strike these portions of Ebaugh's declarations.

B.  The Motion to Amend

Federal Rule of Civil Procedure 15 instructs a Court to freely grant leave to amend a complaint. Fed. R. Civ. P. 15(a)(2).  Nonetheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New

York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)): see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

In this case, as noted above, Mazuma's proposed amended complaint withdraws the state causes of action and adds certain factual allegations in support of the Exchange Act causes of action.  Williams and Zicix now contend that the Exchange Act claims fail as a matter of law because Mazuma cannot establish the requisite element of "loss causation."

The Court finds that, had Mazuma sought to add the Exchange Act claim for the first time, this futility argument would be properly before the Court.  However, the Exchange Act cause of action is already pending before the court.  Therefore, whether the Exchange Act claim suffices as a matter of law is more appropriately reserved for a motion to dismiss.

The Court further finds that Zicix and Williams have failed to establish prejudice by the withdrawal of the state causes of action and the inclusion of the additional factual allegations in support of the Exchange Act cause of action.  The parties have not yet conducted a Rule 26(f) conference; no scheduling order has been entered in this case; and no discovery has yet occurred.  The Court notes that Mazuma moved to amend the complaint only two months after bringing the original complaint.  In the Court's view, Mazuma "moved with adequate dispatch in its quest to amend." Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc., 283 F.R.D. 142, 149 (S.D.N.Y. 2012); see Securities and Exchange Commission v. DCI Telecommunications, Inc., 207 F.R.D. 32, 34–35 (S.D.N.Y. 2002) (allowing

amendment of pleadings four months after the plaintiff learned relevant supporting facts).

In any event, "mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend." <u>Park B. Smith Inc. v. CHF Industries Inc.</u>, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011). Here, Zicix and Williams assert that Mazuma acted in bad faith in (1) bringing the Texas state law claims in federal court only to withdraw them soon after; (2) requesting exemplary, or punitive damages and attorney's fees on the Exchange Act claims even though they are not recoverable under the statute; and (3) initiating this lawsuit as "retaliation" for the SEC proceeding against it.

With respect to the first ground, the Court finds that the fact that Mazuma seeks to withdraw its state law claims, even if solely to strengthen its argument against a stay under the <u>Colorado River</u> doctrine, is not evidence of bad faith. The reliance by Zicix and Williams on <u>Syme v. Rowton</u>, 555 F. Supp. 33, 35 (D. Mont. 1982) is misplaced. There, the court denied a motion to add nondiverse defendants when the plaintiffs' primary motive was to defeat the jurisdiction of the district court. Here, by contrast, Mazuma does not attempt to defeat federal subject matter jurisdiction. Rather, Mazuma permissibly attempts to preserve its choice of forum in this Court.

With respect to the second ground, while "[p]unitive, or exemplary damages, as they are sometimes called, are not available for violations of § 10(b) of the 1934 Act," <u>Globus v. Law Research Serv., Inc.</u>, 418 F.2d 1276, 1283 (2d Cir. 1969) and, likewise, "attorney's fees are not permitted in actions brought solely

under section 10(b) of the Securities and Exchange Act," Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993), Zicix and Williams point to no case law holding that a request for such relief is bad faith *per se*, let alone indicative of bad faith. Further, the Court notes that Mazuma made the same request in the original complaint. For this reason, the Court finds that this an argument more appropriately made on a motion to dismiss rather than in opposition to a motion to amend.

Finally, with respect to the third ground, Williams and Zicix contend that Mazuma admits to filing this lawsuit after the settlement with the SEC provided for a disgorgement of Mazuma's alleged profit of $934,404, plus prejudgment interest of $109,865. However, it does not follow that Mazuma filed this lawsuit, or moved for leave to amend, in bad faith. Rather, as a logical matter, it was not until the terms of the SEC settlement were reached that all the alleged damages were known to Mazuma, thereby allowing it to bring the subject Exchange Act claims.

Therefore, the Court grants Mazuma's motion for leave to file the amended complaint.

C.  The Motion for Stay

Colorado River and its progeny set forth the standards governing abstention when "state and federal courts exercise concurrent jurisdiction simultaneously." Gregory v. Daly, 243 F.3d 687, 702 (2d Cir. 2001) (internal quotation marks and citation omitted). To justify abstention, there must be "exceptional circumstances," such as when "the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) (quoting Colorado

<u>River</u>, 424 U.S. at 813, 817, 96 S. Ct. at 1244, 1246).  "Thus, unlike other doctrines of abstention which are premised on the careful balance between federal and state power, <u>Colorado River</u> mainly concerns the conservation of judicial resources." <u>Allstate Ins. Co. v. Elzanaty</u>, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013)(Spatt, J.), <u>motion to certify appeal granted</u>, 11-CV-3862 (ADS)(ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013).  The "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." <u>Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York</u>, 762 F.2d 205, 210 (2d Cir. 1985).

    1.  <u>The Existence of a "Parallel" State Proceeding</u>

    Before a court evaluates the appropriateness of abstention under <u>Colorado River</u>, it must make a threshold determination that the federal and state court cases are "parallel." <u>Dittmer v. County of Suffolk</u>, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under <u>Colorado River</u>.").  "'Federal and state proceedings are "concurrent" or "parallel" for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" <u>Abercrombie v. College</u>, 438 F. Supp. 2d 243, 258 (S.D.N.Y. 2006) (quoting <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp</u>, 108 F.3d 17, 22 (2d Cir. 1997)).  "Perfect symmetry of parties and issues is not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." <u>In re Comverse Tech., Inc.</u>, No. 06–CV–1849 (NGG)(RER), 2006 WL 3193709, at *2, 2006 U.S. Dist. LEXIS

80195, at \*6 (E.D.N.Y. Nov. 2, 2006)(citing <u>Clark v. Lacy</u>, 376 F.3d 682, 686 (7th Cir. 2004)) (internal citation omitted).

"Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." <u>In re Comverse Tech., Inc.</u>, 2006 WL 3193709, at \*2, 2006 U.S. Dist. LEXIS 80195, at \*6 (citing <u>AAR Int'l, Inc. v. Nimelias Enters. S.A.</u>, 250 F.3d 510, 520 (7th Cir. 2001)).  If a court finds that the federal and state cases are not parallel, "<u>Colorado River</u> abstention does not apply, whether or not issues of state law must be decided by the federal court." <u>In re Comverse Tech., Inc.</u>, 2006 WL 3193709, at \*4, 2006 U.S. Dist. LEXIS 80195, at \*12.

"[A]bstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts." <u>Andrea Theatres, Inc. v. Theatre Confections, Inc.</u>, 787 F.2d 59, 62 (2d Cir. 1986) (citing <u>Levy v. Lewis</u>, 635 F.2d 960, 967-68 (2d Cir. 1980)).

> The reason for this doctrine is clear.  Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on grounds of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

<u>Andrea Theatres, Inc.</u>, 787 F.2d at 62 (quoting <u>Colorado River</u>, 424 U.S. at 817, 96 S. Ct. 1236).

The Plaintiff's 10(b) causes of action are "brought to obtain relief for alleged violations of the Securities Exchange Act of 1934.  It is an action exclusively within the jurisdiction of the federal courts." <u>Finkielstain v. Seidel</u>, 857

F.2d 893, 896 (2d Cir. 1988); see also In re Comverse Tech., Inc., 2006 WL

3193709, at *3 ("given the exclusive jurisdiction of the federal courts over

Exchange Act claims, courts confronted with Colorado River abstention requests in

cases involving such claims have routinely denied those requests"); SST Global

Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 464 (S.D.N.Y. 2003) ("Numerous

cases have held that, because federal jurisdiction over securities claims is exclusive,

abstention with regard to an action involving federal securities claims is

inappropriate.").

Here, because "[f]ederal courts have exclusive jurisdiction over [the

Exchange Act] claims," the federal and state court cases are not parallel, and

"Colorado River abstention is therefore inappropriate." Fields v. Allied Capital

Corp., No. 89 Civ. 5679 (TPG), 1990 WL 128908, at *2, 1990 U.S. Dist. LEXIS

11261, at *3-4 (S.D.N.Y. Aug. 28, 1990) (internal citation omitted); see also

Kingsway Fin. Servs. v. Pricewaterhousecoopers, LLP., 420 F. Supp. 2d 228, 236

(S.D.N.Y. 2005) ("Because the cases are not parallel, the Court does not have

authority to abstain . . . and need not balance the Colorado River factors.") (internal

citations and quotation marks omitted).

The Court acknowledges that "a stay is within the court's discretion where

the exclusive federal claim is frivolous." Gabelli v. Sikes Corp., 90 CIV. 4904

(JMC), 1990 WL 213119, at *5 (S.D.N.Y. Dec. 14, 1990).  A frivolous or vexatious

claim is one without reasonable or probable cause or excuse or lacking justification

and intended to harass. U.S. v. Ali, No. 06-CR-200 (ENV), 2008 WL 4773422, *11

20

(E.D.N.Y. Oct. 27, 2008) (defining "vexatious" under the Hyde Amendment by using dictionary definitions).

Here, Williams and Zicix contend that the 10(b) claims are "frivolous and vexatious" as (1) contrary to the SEC findings of fact in the Cease-and-Desist Order; (2) inconsistent with their cross action against Bethke in the State Lawsuit; and (3) and brought after Mazuma suffer certain legal setbacks in the State Lawsuit, such as the denial of its motion to dismiss for *forum non conveniens*.

The Court disagrees.  While not deciding whether the 10(b) claims could withstand a Rule 12(b)(6) motion, the Court is not prepared to find that the claims lack any factual or legal basis, so as to be frivolous or vexatious.

First, on November 25, 2013, four days after filing the instant federal action, the SEC issued the Cease-and-Desist Order containing certain findings of fact as follows:

> 10. From about April 2009 through about June 2010, Mazuma Holding Corporation ("Mazuma Holding") and Kramer acquired over 1 billion hares of Bederra Corporation ("Bederra") in 21 separate transactions from the principal of Bederra's transfer agent, who had misappropriated the Bederra share certificates.

> 11. Mazuma Holding and Kramer purchased the Bederra shares at a significant discount from the then-prevailing market prices. The discount made it highly likely that Mazuma Holding and Kramer could immediately re-sell the Bederra shares to the public for a short-term profit.

> 12. Mazuma Holding and Kramer resold the shares to the public for a profit of $934,404.

> 13. No registration statement was filed as to any of the Bederra shares offered and sold to Kramer and Mazuma Holding, and which Mazuma Holding and Kramer subsequently resold into the market,

and no exemption from registration was applicable to these transactions.

14. [Mazuma and related parties] used the mails and other means of interstate commerce in connection with these offers and sales of the Bederra shares.

15. As a result of the conduct described above, Kramer, Mazuma Corporation, Mazuma Holding Corporation and Mazuma Funding Corporation violated Sections 5(a) and 5(c) of the Securities Act [of 1933], which prohibit the direct or indirect sale or offer for sale of securities through the mails or interstate commerce unless a registration statement has been filed or is in effect.

(Ebaugh Decl., Ex. B, ¶¶ 10-15.).

As noted above, the Court may consider the Cease-and-Desist order insofar as it is used as a shield by Zicix and Williams against Mazuma's Exchange Act claims.  That said, the Court finds that, contrary to the contention of Zicix and Williams, the factual findings in the Cease-and-Desist order are not so inconsistent, if inconsistent at all, with Mazuma's Exchange Act claim against Zicix and Williams so as to render the Exchange Act claims frivolous and vexatious.  The SEC simply found that Mazuma violated the Exchange Act, but did not foreclose liability in federal court as to Zicix and Williams.

Second, the Court does not find that Mazuma's Exchange Act claim is so inconsistent with Mazuma's positions in the State Lawsuit as to render the Exchange Acts claims frivolous and vexatious.  In the State Lawsuit, Mazuma alleges that Bethke forged signatures on certifications accompanying the sale of the shares from Bethke and that Bederra's president did not know about the forgery.  In the Court's view, that assertion in the State Lawsuit is not at odds with Mazuma's claim here that Bederra should have known or was reckless in not knowing about

22

the sales by Bethke to Mazuma. See S.E.C. v. Obus, 693 F.3d 276, 286 (2d Cir. 2012) (liability for securities fraud requires scienter, which "may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.")(quotation marks and citation omitted).

Third, with respect to the legal setbacks suffered by Mazuma in the State Lawsuit, it is not clear that bringing suit in this Court for exclusively federal claims in response to those setbacks would, by itself, render the federal action frivolous or vexatious.  In any event, it appears that Mazuma brought this action shortly after the terms of the settlement were reached with the SEC, not in response to legal hurdles presented in the State Lawsuit.

In sum, the Court finds that this action and the State Lawsuit are not "parallel" for purposes of Colorado River abstention.  Further, the Court finds that this action is not frivolous or vexatious so as to warrant a stay of this action despite the absence of a "parallel" suit in state court.

2.   Even if the Actions Were Parallel, Abstention is Not Required

Nonetheless, even assuming this action and the State Lawsuit were "parallel" for purposes of Colorado River abstention, the Court finds that abstention is inappropriate in this case.

In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, the court must consider the following factors: "(1) the assumption of jurisdiction by either court over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4)

the order in which jurisdiction was obtained[,] . . . (5) whether state or federal law

supplies the rule of decision, and (6) whether the state court proceeding will

adequately protect the rights of the party seeking to invoke federal jurisdiction."

Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir. 1996); see also United

States v. Pikna, 880 F.2d 1578, 1582 (2d Cir. 1989) (accord).  "No one factor is

necessarily determinative; a carefully considered judgment taking into account both

the obligation to exercise jurisdiction and the combination of factors counseling

[sic] against the exercise is required. . . . Only the clearest of justifications will

warrant dismissal." Colorado River, 424 U.S. at 818–819, 96 S. Ct. 1236 (citation

omitted); see also Burnett, 99 F.3d at 76 (holding that the balance of factors weighs

heavily in favor of the exercise of jurisdiction).  On a motion for abstention, the

presumption is in favor of retaining jurisdiction, not yielding it. Pikna, 880 F.2d at

1582.

     i.     Exercise of Jurisdiction Over a *Res* or Property

     Neither the Texas State court nor this Court has jurisdiction over any *res* or

property in this case.  Such absence weighs "slightly" against abstention or a stay.

Goldentree Asset Management, L.P. v. Longaberger Co., 448 F. Supp. 2d 589, 593

(S.D.N.Y.  2006).

     ii.     Convenience of the Forums

     As to the convenience of the federal versus state forum, the Court notes that

all the individual parties in this action are residents of Texas; Zicix has its principal

place of business in Texas; and Mazuma is a Texas corporation and concedes that

24

its principal place of business in Texas. (Mazuma Opp Brf, at 19; Kramer Decl, ¶¶ 2.).

On the other hand, the Mazuma representatives who were involved in the purchase of the Bederra Shares worked in and still work in Mazuma's Great Neck office. (Kramer Decl, ¶ 2.).  For this reason, the Court finds that this factor weighs slightly against abstention.

Mazuma highlights that the forum selection clause of the stock purchase agreements for the Bederra Shares provides that the venue for any litigation arising from it would be in a court of subject matter jurisdiction in Nassau County, New York.  Aside from the fact that the Court takes judicial notice of its location in Suffolk County, the Court finds that, for purposes of the motion for a stay, the stock purchase agreement binds only Mazuma and Bethke.

In this regard, the parties dispute whether the purported "signature" on the stock purchase agreements is, in fact, Williams's signature.  Williams and Zicix submit an affidavit, wherein Williams states that he did not authorize anyone to "execute" certain documents, including the relevant stock purchase agreements, on his behalf.  The Court declines to consider this affidavit, at this stage of the litigation, submitted for the first time in reply in support of the motion for a stay. See generally Tetra Techs., Inc. v. Harter, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) ("Nor may entirely new but foreseeable points relevant to a motion be presented in a reply affidavit . . . . Such a procedure is foreign to the spirit and objectives of the Federal Rules of Civil Procedure.  Were tactics of this type permitted, a sur-reply

affidavit would be necessary from the adversary, followed by a further supplemental response by the moving party, and so on *ad infinitum*.").

Nonetheless, given that the SEC has already found that "Bethke fabricated officers' certificates and company resolutions in connection with the sale of the shares," the Court finds that Williams – and, thus, Zicix – were not signatories to the stock purchase agreement.  At this point, the Court pauses to note that the factual findings and conclusions of the Cease-and-Desist order are admissible, to the extent consistent with Fed. R. Evid 408, under Fed. R. Evid. 803(8), which provides an exception to the hearsay rule for the following:

> A record or statement of a public office if: (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8); see Option Resource Group, 967 F. Supp. at 851 (findings and conclusions in SEC settlements admissible under former Rule 803(8)(c)); see also Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988) (JAG report, including findings and conclusions, admissible pursuant to former Fed. R. Evid. 803(8)(c)); Figueroa v. Boston Scientific Corp., 2003 U.S. Dist. LEXIS 10936, at *8 (S.D.N.Y. June 25, 2003) (FDA findings admissible pursuant to former Fed. R. Evid. 803(8)(c)).

To be sure, a party's "non-signatory status does not, as a general matter, prevent it from being bound by the forum selection clause." LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 154 (E.D.N.Y. 2012) (citing Aguas

Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009)).  To

determine when a non-signatory is bound, "courts look at whether the non-signatory

is so closely related to the dispute that it becomes foreseeable that it will be bound."

Leviton Mfg. Co., Inc. v. Reeve, 11-CV-6238, 2013 WL 504020, at *8 (E.D.N.Y.

Feb. 7, 2013) (internal quotation marks omitted).  While the Second Circuit has not

reached the question of "when" a signatory may enforce a forum selection clause

against a non-signatory, Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d

714, 723 n. 10 (2d Cir. 2013), "the 'closely related' test is an analysis that has been

embraced by several courts in this Circuit." Leviton, 2013 WL 504020, at *9

(collecting cases); see also In re Refco Inc., Secs. Litig., No. 08 Civ. 3086, 2009

WL 5548666, at *10 (S.D.N.Y. Nov. 16, 2009) ("After Aguas, there can be no

dispute that forum selection clauses will be enforced even against non-signatories

where they meet the 'closely related' standard.").  Although "the phrase 'closely

related' is not particularly illuminating," the foreseeability requirement "implies

that the non-signatory must have been otherwise involved in *the transaction* in

some manner." Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors, 875

F. Supp. 2d 297, 307–08 (S.D.N.Y. 2012)(emphasis added)(internal citation

omitted).

   In Universal Grading Service v. eBay, Inc., No. 08–CV–3557, 2009 WL

2029796, at *16 (E.D.N.Y. June 10, 2009), the court held that a close business

relationship between a signatory and non-signatory is an important factor in

determining if it was foreseeable that the non-signatory would be bound. See id.

("Other courts have found that a close business relationship between a non-party

and a party to an agreement is an important consideration in determining whether a forum selection clause in the agreement is enforceable against the nonparty.") (collecting cases); In re Refco Inc., Securities Litigation, 2009 WL 5548666, at *11 (holding the non-signatory and the signatory to be closely related when their business operations were "intertwined.").

Here, the Court finds that Bethke, a director of Bederra and a signatory to the stock purchase agreements, held a close business relationship with Bederra and Williams, the CEO of Bederra, as a general matter.  However, it does not follow that Williams and Bederra were closely involved with the execution of the stock purchase agreements.

Mazuma asserts that Bederra should have known or was reckless in not knowing about the sales by Bethke to Mazuma.  If Mazuma ultimately proves this assertion at trial, then it would be reasonable to bind Williams, and by extension, Bederra, to the forum selection clause.  However, the Court cannot make this determination at this stage of the litigation as it speaks to the ultimate issue of the liability of Williams and Bederra, or Zicix.  Therefore, in this abstention analysis, the Court accords little, if any, weight to the forum selection clause.

iii.     Avoidance of Piecemeal Litigation

The third Colorado River factor involves an analysis of whether the federal action must be dismissed in order to prevent piecemeal litigation. Vill. of Westfield v. Welch's, 170 F.3d 116, 123 (2d Cir. 1999) (citation and internal quotation marks omitted).  According to Williams and Zicix, this Court and the Texas state court would be litigating similar factual and legal claims.  However, as discussed above,

28

the issues in the federal and state cases are not the same because the state court does not have jurisdiction over Mazuma's exclusively federal 10(b) claims. Finkielstain v. Seidel, 857 F.2d 893, 896 (2d Cir. 1988)("[An action] brought to obtain relief for alleged violations of the Securities Exchange Act of 1934 . . . is an action exclusively within the jurisdiction of the federal courts.").  "The presence of the federal securities law claim . . . makes it plain that abstention as to the state law claims would not operate to reduce piecemeal litigation." SST Global Tech., LLC, 270 F. Supp. 2d at 465 (citing Cohen v. Reed, 868 F. Supp. 489, 500 (E.D.N.Y. 1994) (finding that, if the federal "action were stayed or dismissed pending resolution of the State-court action, [the plaintiff] would not be able to litigate his federal securities fraud claim, and would have to return to federal court once more . . . [and] [t]hus, abstention would not serve to avoid piecemeal litigation")). Because the Texas trial court does not have "broad and comprehensive concurrent jurisdiction to adjudicate the claims asserted in the federal action . . . abstention might only serve to encourage piecemeal adjudication of the issues raised in the federal suit." Andrea Theatres, 787 F.2d at 62.

In any case, "[t]he mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor." In re Bank of Am. Corp. Secs., 757 F. Supp. 2d 260, 345 (S.D.N.Y. 2010) (citing Colorado River, 424 U.S. at 816, 96 S. Ct. 1236 ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.")); see also In re Comverse Tech., Inc., 2006 WL 3193709, at *6, 2006 U.S. Dist. LEXIS 80195, at *17 ("[T]he potential for piecemeal litigation

is always present in potentially parallel litigations, and the courts must look beyond this factor to ascertain whether abstention is appropriate."). Moreover, while not staying the federal actions will lead to some amount of duplication due to similar "factual underpinnings," such "duplication does not weigh significantly in favor of abstention." SST Global Tech., LLC, 270 F. Supp. 2d at 466.

An additional area for consideration in the piecemeal litigation analysis is whether resolution in one forum would resolve the claims for all parties. Shields v. Murdoch, 891 F. Supp. 2d 567, 582-83 (S.D.N.Y. 2012). Abstention is "more appropriate" when the parties to the state and federal actions are "not identical" as there is a "possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits." Id. (quoting Fischmann v. VisionTel., 934 F. Supp. 115, 118 (S.D.N.Y. 1996)) (internal quotation marks omitted). The Second Circuit has further noted that

> the primary context in which [it] [has] affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties.

Woodford, 239 F.3d at 524. "Here, as the federal and state actions are based on the same underlying facts, there is some risk of an inconsistent result; this Court could make a determination on common issues which might not bind the parties named only in the state court action." Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 600 (S.D.N.Y. 2013).

However, "any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to Colorado River would be the rule, not the exception, in cases involving parallel proceedings in state and federal court." In re Asbestos Litig., 963 F. Supp. 247, 253 (S.D.N.Y. 1997) (citation and internal quotation marks omitted); see also Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc., 829 F. Supp. 2d 82, 87 (E.D.N.Y. 2010) (same).

While the existence of the Exchange Act claims and the additional parties in the federal action may lead to piecemeal litigation, granting the motion to stay may not prevent – or reduce the likelihood of – piecemeal litigation. "On balance, [therefore,] this factor . . . would not appear to weigh heavily either for or against abstention." SST Global Tech., LLC, 270 F. Supp. 2d at 466. Because, "[i]n this [abstention] analysis, the balance [is] heavily weighted in favor of the exercise of jurisdiction[,] . . . the facial neutrality of [this] factor is a basis for retaining jurisdiction, not for yielding it." Woodford, 239 F.3d at 522 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)(internal citation and quotation marks omitted). Thus, this factor weighs slightly against abstention.

> iv.     The Order in which Jurisdiction Was Obtained

The fourth Colorado River factor involves an analysis of "the order in which jurisdiction was obtained." Vill. of Westfield, 170 F.3d at 121. "This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." Id. at 122 (citing

Moses, 460 U.S. at 21, 103 S. Ct. 927) (quotation marks omitted).  "In addition, where there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'" Id. (citing Andrea Theatres, Inc., 787 F.2d at 64).

Here, although the State Lawsuit was filed over a year before this action was filed, both cases are in their infancy.  In the State Lawsuit, there have been no depositions of any party or non-party witness.  Also, there is currently pending an interlocutory appeal of a decision denying the Kramer and Mayo's motion to dismiss for lack of personal jurisdiction.  The State Lawsuit is currently being continued, with an expected trial date in Fall 2014 or early 2015.

Turning to this action, the Court notes that there has been no discovery. Judge Brown's Initial Conference Order provides a deadline of October 16, 2014 for completion of all discovery.  Comparing the progress of these actions leads the Court to conclude that this factor weighs neutrally.

> v.      Whether State of Federal Law Supplies the Rule of Decision

The fifth factor in the Colorado River analysis is "whether state or federal law provides the rule of decision on the merits." Vill. of Westfield, 170 F.3d at 123. The Second Circuit has stated that "when the applicable substantive law is federal, abstention is disfavored." Id. (quoting De Cisnerosv. Younger, 871 F.2d 305, 308 (2d Cir. 1989)).

"Because the present claim includes federal securities law claims over which this Court has original and exclusive jurisdiction, federal law . . . supplies the rule of decision with regard to [Mazuma's 10(b)] claim(s)." SST Global Tech.,

LLC, 270 F. Supp. 2d at 466-67.  Thus, this factor weighs heavily against abstention.

> vi.  Whether the State Court Proceeding Will Adequately Protect the Rights of the Party Seeking to Invoke Federal Jurisdiction

"In analyzing the sixth factor . . ., federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Vill. of Westfield, 170 F.3d at 124 (quoting Moses, 460 U.S. at 28, 103 S. Ct. 927).  "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay . . . at all." Moses, 460 U.S. at 28, 103 S. Ct. 927.

"As discussed above, this Court has exclusive jurisdiction over [Mazuma's] Exchange Act claims, and those claims cannot be adjudicated in state court." In re Comverse Tech., Inc., 2006 WL 3193709, at *7, 2006 U.S. Dist. LEXIS 80195, at *20; see also SST Global Tech., LLC, 270 F. Supp. 2d at 466–67 ("Because the present claim includes federal securities law claims over which this Court has exclusive jurisdiction . . . plaintiff's interest relating to its securities law claims could not, as a matter of law, be adequately protected in state court, which is barred from providing affirmative relief with regard to these claims.").  "Because [Mazuma's] federal claims cannot be vindicated in the state court proceeding, it will not adequately protect their rights." Shields, 891 F. Supp. 2d at 585.  Accordingly, the sixth factor weighs heavily against abstention.

      vii.     <u>Other Factors</u>

"In addition to the six factors already discussed, some courts considering whether to abstain under <u>Colorado River</u> have found 'that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation.'" <u>First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.</u>, 862 F. Supp. 2d 170, 194 (E.D.N.Y. 2012). "In <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 363 (2d Cir. 1985), for example, the Second Circuit concluded that abstention was appropriate where the same party was the plaintiff in both the state and federal actions, and the plaintiff had filed the federal action after suffering some failures in the earlier state action." <u>First Keystone</u>, 862 F. Supp. 2d at 194.

As the Court previously held, the present action is neither frivolous nor vexatious.  <u>First Keystone Consultants</u> and <u>Telesco</u> do not dictate otherwise, as both involved plaintiffs who filed a state court lawsuit as well as a federal lawsuit.  Here, Mazuma is the defendant in the State Lawsuit and could not bring the federal securities claim in that court.

      viii.     <u>The Summary</u>

In sum, the Court finds that three factors – the exercise of jurisdiction or lack thereof over a *res* or property, the convenience of the forums, and the avoidance of piecemeal litigation – weigh slightly against abstention; one factor – the order in which jurisdiction was obtained – weighs neutrally; and two factors – the rules of decision and whether the state forum would adequately protect the interests of the party invoking federal jurisdiction – weigh heavily against

34

abstention.  Balancing these factors together, and mindful of the fact that with regard to Mazuma's § 10(b) claim plaintiff does not have a remedy in state court and federal law supplies the rule of decision, the Court finds that there are no exceptional circumstances that justify abstention.  Accordingly, the Court denies the application by Williams and Zicix for a stay.

D.  <u>The Motion to Transfer Venue</u>

As noted above, Williams and Zicix alternatively request that this case be transferred to the Southern District of Texas under the provisions of 28 U.S.C. § 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." <u>Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)</u>, 980 F.2d 110, 117 (2d Cir. 1992).

"Deciding a § 1404(a) motion to transfer venue 'requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate.'"<u>AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd.</u>, 775 F. Supp. 2d 640, 645 (S.D.N.Y. 2011)(citation and quotation marks omitted).

With respect to the first step, the venue of an Exchange Act claim is exclusively governed by 15 U.S.C. § 78aa, without regard to the general venue

provisions of 28 U.S. § 1391.  Blass v. Capital Intern. Security Group, No. 99-5738 (FB), 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001) ("Venue of claims brought under the Exchange Act are governed exclusively by section 27, not by the general venue provisions of 28 U.S.C. § 1391.").  Here, Mazuma concedes that venue would have been proper in the Federal Court in the Southern District of Texas.

With respect to the second step, the following factors are relevant to determining if transfer is appropriate:

> (1) plaintiff's choice of forum, (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of circumstances.

Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp., 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012); see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (listing, "inter alia," factors one through seven).  No single factor is determinative.  See Mitchell v. City of New York, 12 Civ. 5933(KPF), 2013 WL 5942236, at *2 (S.D.N.Y. Nov. 6, 2013).  Further, "[t]he moving party carries the 'burden of making out a strong case for transfer' by clear and convincing evidence." Dunston v. N .Y. City Police Dep't, 10 Civ. 8117(RJS), 2010 WL 5065903 at *1 (S.D.N.Y. Dec. 7, 2010), quoting N.Y. Marine & Gen. Ins. Co., 599 F.3d at 112.

Finally, while there is "'no per se rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is

headquartered,' such transfers to the issuer's home district are routine 'as a practical matter.'" In re AtheroGenics Sec. Litig., No. 05 Civ. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006), quoting In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 168-69 (E.D.N.Y. 2006).

### 1. The Plaintiff's Choice of Forum

"The plaintiff's choice of forum is generally entitled to deference, unless the forum chosen is not the plaintiff's home forum." ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008). As noted above, Mazuma is a Texas corporation with its principal place of business in Texas. However, Mazuma has sufficiently established that its participation in the events giving rise to this case occurred in New York. (Kramer Decl, at ¶ 4.) The discussions that led to Mazuma buying the Bederra shares were conducted and negotiated through third parties in New York with Bethke, using telephones, faxes, or emails – without any travel to Texas – and one meeting in New York. Thus, as in ESPN, Inc., the Court accords considerable weight to Mazuma's choice of forum. ESPN, Inc., 581 F. Supp. at 551 ("ESPN has sufficiently established that many of its operations, including those germane to this case, are carried out in New York City, and that most of its potential witnesses work in New York.").

### 2. The Convenience to the Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (citation and quotation marks omitted). Moreover, "[t]he convenience of

non-party witnesses is accorded more weight than that of party witnesses." <u>Indian</u> <u>Harbor Ins., Co. v. Factory Mut. Ins. Co.</u>, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

To support its motion, the moving party must submit "an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." <u>Laumman Mfg. Corp. v.</u> <u>Castings USA, Inc.</u>, 913 F. Supp. 712, 720-21 (E.D.N.Y. 1996) (denying transfer because the defendant failed to state the substance of the supposed key witnesses' testimony).

In this regard, weighing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." <u>Herbert Ltd. Partnership v. Electronic</u> <u>Arts Inc.</u>, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).  However, that is precisely what Williams and Zicix do, providing a table setting forth the fact that there are 12 expected witnesses who are residents of Texas versus 7 expected witnesses who are residents of New York.  While Williams and Zicix identify the "subjects" of the anticipated testimony, they fail to indicate whether such testimony would be material. <u>Id.</u> (in a § 1404(a) analysis, "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.").

Here, Williams and Zicix contend that Bethke is "the most material" witness and he resides in Houston, Texas. (Ebaugh Decl., at ¶ 22.)  However, the Court notes that Bethke is a party to this case; has been served; and has not filed a motion

38

to transfer venue nor said he is unwilling to appear in New York.  On the other hand, the Court notes that Kramer and Mayo, non-parties who are likely to provide relevant testimony on behalf of Mazuma, reside in New York.

In any event, Williams and Zicix have not demonstrated what, if any, problems would arise from the out-of-state witnesses testifying by deposition pursuant to Fed. R. Civ. P. 32. See Schwartz v. Marriott Hotel Servs., Inc., 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002).

Accordingly, the Court finds that this factor weighs against transfer.

3.  Location of Relevant Documents and the Relative Ease of
Access to Sources of Proof

The Court notes that Zicix's relevant documents are located in Texas and those of Mazuma are located in New York.  However, it has been repeatedly noted that "[i]n in an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." ESPN, Inc. 581 F. Supp. 2d at 548.  "Moreover, neither party has presented any evidence regarding the volume of the records and documents that they will produce or the cost of transporting those documents to the relevant forum." Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd., 09 CIV. 2570 (HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009); Intria Corp. v. Intira Corp., 00 Civ. 7198 (AGS), 2000 U.S. Dist. LEXIS 17039, at *15, 2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000) ("A defendant's assertion that documents are located in the transferee forum is entitled to little weight unless the defendant makes a detailed showing as to the burden it would incur absent a transfer.").  Accordingly, this factor is neutral.

### 4.   The Convenience of the Parties

This Court also finds that this factor is neutral.  Mazuma's representatives who have knowledge relating to this action are in New York.  The Defendants are located in Texas, although one of the Defendants, Bethke, has agreed that New York is a convenient forum by virtue of the forum selection clause.  "In terms of the convenience of the parties, the Court recognizes that "'[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." EasyWeb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012)(citation and quotation marks omitted).

As noted above, the Court declines to enforce the forum selection clause against Williams and Zixic because doing so would require the Court to opine on the ultimate issue of liability in this action.

### 5.   The Locus of Operative Facts

"Where the operative facts occurred is an obvious factor to consider." Pall Corp. v. PTI Technologies, Inc., 992 F. Supp. 196, 200 (E.D.N.Y. 1998). "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." Purcell Graham, Inc. v. National Bank of Detroit, No. 93 Civ. 8786 (MBM), 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (citations omitted) (finding transfer appropriate where material acts and omissions underlying the plaintiff's complaint occurred in transferee district); see Bortel v. JHM Mortgage Sec. L.P., No. C–94–20530 (JW)(PWT), 1995 WL 7953 (N.D. Cal. Jan.5, 1995) (transferring securities fraud

class action to Virginia because it was the factual center of the case, even though fourteen of the named plaintiffs resided in California).

Here, Mazuma does not dispute that, for purposes of the § 1404(a) analysis, the locus of operative facts relating to the 10(b) claims is in the Southern District of Texas. Accordingly, this factor weighs in favor of transfer.

6. Availability of Process to Compel Attendance of Unwilling Witnesses

Williams and Zicix argue that it plans to call four non-party witnesses from Texas who cannot be compelled to testify in New York. "However, the defendants fail to provide any evidence that any of these persons is unwilling to testify on the defendants' behalf in a trial in New York." Schwartz, 186 F. Supp. 2d at 250 (E.D.N.Y. 2002); see also Brozoski v. Pfizer, Inc., 2001 WL 618981 *4 (S.D.N.Y. June 6, 2001) (citing Soto v. Bey Transportation Co., 1997 WL 407247 (S.D.N.Y. July 21, 1997) (holding that where a defendant fails to present evidence demonstrating that its witnesses would be unwilling to testify, the ability to compel the attendance of witnesses is not a factor in the transfer-of-venue analysis)). Thus, this factor militates against transfer.

7. The Relative Means of the Parties

"Where a disparity exists between the means of the parties . . . the court may consider the relative means of the parties in determining where a case should proceed." Zaltz v. JDATE, 952 F. Supp. 2d 439, 463 (E.D.N.Y. 2013)(citation and quotation marks omitted); see also AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash., 675 F. Supp. 2d 354, 372 (S.D.N.Y. 2009) ("In determining whether the relative means of the parties weighs in favor of transfer, a

court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." (citation and internal quotation marks omitted)).  However, as here, "where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered."  Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006)); see also Quan v. Computer Scis. Corp., Nos. CV 06–3927 (CBA)(JO), CV 06–5100 (CBA)(JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis."); Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (citation and internal quotation marks omitted)).

        In particular, the Williams and Pratt declarations state that each is using his savings or retirement income to supplement social security income as a source of living expenses.  Tellingly, however, they provide no evidence of the amount of savings or retirement income.

        Williams and Zicix also contend that Zicix is winding up its affairs and that it would be unduly burdensome on Zicix's finances to defend itself in this Court. However, in the Court's view, Williams and Zicix fail to provide this Court with evidence that retaining jurisdiction in the Eastern District of New York would

disrupt Zicix's affairs or interfere with Williams and Pratt's responsibilities toward Zicix.

The fact that Mazuma is a corporation and Williams and Pratt are individuals does not, without sufficient proof of the latter's finances, favor transfer, particularly given that Zicix, a corporation, is a defendant as well. But see Chong v. Healthtronics, Inc., CV-06-1287 (SJF)(MLO), 2007 WL 1836831, at *13 (E.D.N.Y. June 20, 2007)("Since plaintiff is an individual and defendant is a corporation, the 'relative means of the parties' factor weighs in favor of plaintiff.").

Accordingly, this factor is neutral.

### 8.   The Forum's Familiarity with the Governing Law

"This is a federal securities fraud class action.  Both the [Eastern] District of New York and the Southern District of Texas are equally capable of applying federal securities law to this action.  This factor is therefore neutral." In re McDermott Int'l, Inc. Sec. Litig., 08 CIV. 9943 (DC), 2009 WL 1010039, at *5 (S.D.N.Y. Apr. 13, 2009).

### 9.   Trial Efficiency

"In considering trial efficiency, a district court may pay some mind to relative levels of docket congestion in the prospective transferor and transferee districts." In re Global Cash Access Holdings, Inc. Sec. Litig., 08 CV. 3516 (SWK), 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008).  Here, the medium time to trial in civil cases in the Eastern District of New York for the year 2012 is 8.7 months while in the Southern District of Texas it is 7.6 months, a negligible difference. (Loewinsohn Decl., Exs. 2 & 3.).

Relying on In re Global Cash, Williams and Zicix contend that transfer to the Southern District of Texas "would, at a minimum, consolidate any discovery in the two actions to the same geographical area, thereby saving time and expense for the overlapping parties, witnesses, and their attorneys." 2008 WL 4344531, at *8; Bombardier Capital, Inc. v. Solomon, 00 Cv. 848 (RMB), 2000 WL 1721138, at *6 (S.D.N.Y. Nov. 17, 2000) (noting that transfer of federal litigation to "same geographical area" as pending state case would facilitate trial efficiency).  However, "although th[is] case is still in its early stages, a transfer would if anything delay resolution of this dispute as a new court familiarized itself with the facts of the case." Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598, 603 (S.D.N.Y. 2009).  Accordingly, this factor is neutral.

      10. The Interests of Justice

Based on a totality of the circumstances, "[t]he interest of justice is a separate component of the Court's § 1404(a) transfer analysis, and may be determinative in a particular case." Tucker Anthony, Inc. v. Bankers Trust Co., No. 93-CV-0257 (SWK), 1994 WL 9683, at *8 (S.D.N.Y. Jan. 10, 1994) (citations and internal quotations omitted); Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) ("Concerns over judicial efficiency outweigh all other factors in this case, and are dispositive of the issue.").  Ultimately, the Court's "discretionary analysis is guided by its determination [of] whether consolidation of the cases would promote judicial efficiency and avoid inconsistent results." Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA, 720 F. Supp. 2d 213, 219 n. 4 (E.D.N.Y. 2010).

In this case, given that the two cases cannot be consolidated, the Court concludes that any benefit gained by transferring this action would be minimal.

"Although some courts have transferred a case in the interest of judicial economy when the transferee judge had preexisting knowledge or expertise, this rationale tends to involve complex factual circumstances or legal issues." Ahmed v. T.J. Maxx Corp., 777 F. Supp. 2d 445, 453-54 (E.D.N.Y. 2011); see e.g. Fuji Photo Film Co., Ltd.., 415 F. Supp. 2d at 376-77 (holding that, while the related cases between the same parties involved different patents, transfer was warranted because the judge in the proposed transferee court had "considerable experience and familiarity with the complex technology involved" in the cases). Here, the potential transferee judge is unknown at this time, and while some federal securities actions can involve complex issues, there is nothing in the record to indicate that such is the case here. Accordingly, this factor is neutral.

11. The Summary

In sum, the Court finds that three factors – the Plaintiff's choice of forum; the convenience to witnesses; and the availability of process to compel attendance of unwilling witnesses – counsel against transfer. The Court further finds that one factor – the locus of operative facts – weighs in favor of transfer. Finally, the Court finds that the remaining six factors – the location of relevant documents and ease of access to sources of proof; the convenience of parties to the suit; the relative means of the parties; the forum's familiarity with the governing law; trial efficiency; and the interest of justice, based on the totality of circumstances, neither weigh in favor or against transfer.

Thus, the Court finds that the balance of the factors does not weigh in favor of transfer.  Accordingly, the motion by Williams and Zicix to transfer venue to the Southern District of Texas is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

      **ORDERED**, that the motion by Mazuma to strike certain evidence submitted in support of the motion for a stay is denied; and it is further

      **ORDERED**, that the motion by Mazuma to file an amended complaint is granted; and it is further

      **ORDERED,** that the motion by Williams and Zicix motion for a stay of this action under the Colorado River doctrine or to transfer venue to the Southern District of Texas is denied.

**SO ORDERED.**

Dated: Central Islip, New York
March 3, 2014

                              *Arthur D. Spatt*
                                ARTHUR D. SPATT
                          United States District Judge